## THE STATE OF KANSAS v. TAYLOR HORNE.

1. CHANGE OF VENUE; *Affidavits; Practice.* On a motion for a change of venue the appellant read a number of affidavits tending to show, by general averments and not by specific statements of facts, that such prejudice existed against him in the county that he could not have a fair trial. For the state a number of affidavits were read tending to show that a fair trial could be had, and that in the different portions of the county where the affiants resided no prejudice against the appellant existed. The court refused to grant the change of venue; *held*, no error.

2. MURDER TRIAL; *Evidence relating to Deceased.* On a trial for murder the state may introduce testimony showing that the deceased was intoxicated at the time of the homicide.

3. WITNESS—*Recalling; Impeaching.* Where a defendant in a criminal cause has testified in his own behalf and left the stand, it is not error for the court to allow him to be recalled by the state and cross-examined for the purpose of laying the foundation for impeaching his testimony, if the cross-examination related to the testimony he had given in his own behalf.

4. INTENT OF ACCUSED; *Evidence; Competency.* Where the accused is on trial for an alleged felonious homicide, the state may show that the accused was looking and inquiring for deceased a short time before the killing, and what the accused said at such time in regard to the deceased.

5. EXCUSABLE AND JUSTIFIABLE HOMICIDE; *Instructions.* On a trial for murder, if the defendant relies on a supposed necessity for the killing, as a justification or excuse, the rule to be applied is, that the accused must have believed that he was in immediate and actual danger of his life from the deceased, and this belief must rest on reasonable grounds, and the party from whom the danger is apprehended must be making some attempt to execute his design, or at least be in an apparent situation to do so, and thereby induce a reasonable belief that he intends to do so immediately.

6. VERDICTS—IMPEACHING—*Affidavits of Jurors.* Affidavits of jurors will not be read to impeach their verdict on any ground essentially necessary to consider in making up the verdict.

### *Appeal from Neosho District Court.*

TAYLOR HORNE was charged by information with murder in the first degree, and convicted of murder in the second degree. He was charged with the killing of James Curran, at Osage Mission, in Neosho county, on the 15th of December 1870. The case was tried at the April Term 1871. An application for a change of the place of trial was made by defendant, and refused by the court. On the trial the state gave evidence of threats made by defendant against deceased shortly before the killing. The defendant gave evidence showing that at the time of the alleged homicide he was acting as city marshal of the city of Osage Mission, and he sought to justify the killing of Curran on the ground that Curran was resisting defendant as such officer. Defendant asked the court to give certain instructions, fifteen in number, some of which were refused, and others were given. Of those refused were the following:

"1st. Where threats of a recent date, and other circumstances which would tend to lead the defendant to believe that his life was in imminent danger, or that he was in imminent danger of receiving great bodily injury, and there were reasonable grounds to induce the defendant to believe that a design existed in the mind of the deceased to carry his threats into execution, and while the defendant was laboring under such belief he slays the assailant, it would not be murder, but the killing would be justifiable, and no criminality would attach to the slayer.

"4th. You are to look at the parties to this unhappy trans-

action in their relative knowledge of each other's character and strength, to consider the circumstances attendant upon the contest on the 15th of December last; their respective feelings, and all the other circumstances as already called to your notice; to inquire whether the defendant was a man of far inferior physical strength to that of the deceased, and was not a man of great courage and strength, and had a reason to believe that in case of an attack upon him by the deceased, James Curran, (the man the evidence shows him to have been,) he would be in danger of loss of life or enormous bodily injury; and if you do find that an attack of such intent and character was made upon him, and he was acting in the discharge of his official duties, he would be excused in taking the life of the deceased in so doing with all the means of defense, if he had reason to believe and did believe that he was in serious danger of loss of life or of receiving great bodily injury.

"14th. The defendant asks the court to read to the jury as an instruction, all of § 9 of the crimes act, (Gen. Stat., 319,) and then to instruct them as follows: The words 'immediate danger,' in the second subdivision of the foregoing section, do not mean that there must be in fact an impending evil which is ready to fall, but only that there is a threatened evil, or one which appears as it were ready to fall. There must be reasonable ground to apprehend a wicked design, and apparent danger that such design will be accomplished. It is enough by the express words of the statute, that there are reasonable grounds to apprehend a wicked design. It is not necessary that the danger of the apprehended design being accomplished should be actual; it is sufficient if the danger is merely apparent."

The 6th, 7th, 8th and 9th instructions asked were similar to the 1st and 4th, and like them were refused. Among the instructions asked by defendant, and given, was the following:

"15. Actual and positive danger is not indispensable to justify self-defense. If one is pursued or assaulted in such a way as to induce in him a reasonable and well-grounded belief that he is actually in danger of losing his life, or receiving great bodily harm, under the influence of such apprehension he will be justified in defending himself whether the danger be real or only apparent. Men when threatened with danger must determine from appearances, and the actual state of

things surrounding them, as to the necessity of resorting to self-defense; and if they act from reasonable and honest convictions they will not be held responsible criminally for a mistake in the extent of the actual danger where other judicious men would have been alike mistaken."

The jury found the defendant guilty of murder in the second degree. On the motion for a new trial, and in support thereof, the affidavits of two of the jurors who tried the case were offered to impeach their verdict. The district court refused to receive them. New trial refused, and judgment on the verdict. Defendant appeals to this court.

*T. W. Cogswell,* and *Stillwell & Baylies,* for appellant :

1. The change of venue should have been granted. The defendant had done all that was required by § 177 of the criminal code. He set forth in his petition the *facts* upon which his application was made, sustained by his own oath and the affidavits of others, as required by law. The state undertook, by counter affidavits, to disprove the existence of the facts alleged by appellant, in which we claim the state has failed. The affidavits read in support of appellant's petition show that the minds of the people of *the county* were so prejudiced against defendant that he could not have a fair trial. The affiants, in opposition to the motion, limit themselves to their knowledge of the feeling in their own neighborhoods. We claim the evidence largely preponderated in favor of the defendant; and the granting or refusing of his prayer for a change of venue was no longer a matter of discretion with the court, but it was the defendant's right, and it was error in the court to refuse it. The affidavits of the jurors Miller and Young, who sat in this case, must go far toward convincing the candid mind that the statements of the defendant in his petition for a change of venue were founded in truth; that there was a deep-seated prejudice against him in the minds of the people of the county where the cause was pending for trial, from the influence of which prejudice the jury who tried him did not escape.

2. The question asked by the state, of the witness Aubu-

chon, "State if you know if James Curran (the deceased) was intoxicated?" was manifestly improper, both as to form and substance, and the objection of defendant thereto should have been sustained by the court. The answer to the question could certainly prove nothing; and its tendency was to pre-judice the defendant before the jury by getting them imbued with the idea that the defendant was not only guilty of killing the deceased, but that the killing was done while the deceased was in such a state of helpless drunkenness as to be incapable of either attack or defense.

3. The court erred in permitting the state to recall the defendant Horne, and re-cross-examine him at length, for the purpose of compelling him to furnish a foundation to enable the state to impeach him, after Horne had retired from the stand, and after he had rested his defense. When Horne retired from the stand, upon the close of his re-direct exami-nation, his functions as a witness had terminated, and the state had no more right to subsequently compel him to testify again than it would have had the right to introduce him as a witness in its behalf in the first instance. Independent of the provisions of § 215 of the criminal code, as amended by ch. 118, laws of 1871, which provides "that no person on trial or examination shall be required to testify except as a witness *on behalf of the person on trial or examination,*" the constitution throws a still greater security around a defendant in criminal cases, by unqualifiedly declaring that "no person shall be a witness against himself."

4. The questions put by the state to the witness James Barnes, and his answers thereto, were improper. The object of this testimony was to impeach the defendant Horne, and we submit that under the settled rules governing in such cases, (1 Greenl. Ev., § 462,) the state had laid no proper foundation to authorize the introduction of testimony of that character. The defendant was asked nothing concerning a *conversation* between him and the witness Barnes, but was interrogated only as to whether he had *met* Barnes shortly previous to the alleged killing. With this sort of a basis to

build on, the state was permitted, against the objections of defendant, to give in evidence through the witness Barnes, full details of a conversation Barnes claimed to have had with Horne only fifteen minutes or half an hour before the alleged killing occurred; the effect which the recital of that conversation must have had on the jury prejudicial to the defendant, cannot be doubted.

5. Instructions No. 1 and No. 2, asked for by defendant and refused by the court, embody a correct principle of law applicable to the facts in this case, and should have been given. It was an undisputed fact that at the time of the alleged killing the defendant was the acting marshal of the city of Osage Mission. That a distinction exists between the taking of human life by an officer of the law, when acting in the discharge of his duty, and the case of a mere private individual, certainly cannot be denied. 1 Wharton's Am. Cr. L., §§ 1030, 1031. It was of the utmost importance to the defendant, and was his right, to have the jury informed of this distinction. If the jury had been informed by the court of what we consider to be the well-settled rule of law, and correctly stated in instruction No. 3, that an *officer* is not bound *to retreat at all*, it is but reasonable to presume, in view of all the circumstances of this particular case, that the verdict of guilty would never have been rendered.

6. The construction the defendant asked the court to place upon the second subdivision of § 9, of the crimes act, is the one that has hitherto been recognized by the courts. 1 Wharton's Am. Cr. L., § 1027, note *x*.

7. The general instructions given by the court were manifestly too broad and sweeping. The court expressly told the jury, in substance, that if they did not believe that the alleged killing was justifiable under the second subdivision of § 9 of the crimes act, then they should find the defendant guilty. To give the instruction in this manner, without making any exceptions for the inferior degrees, must have had a direct tendency to mislead the jury, and was error.

8. The court in its general instructions uses this language:

"You are to decide whether the killing of James Curran, *by this defendant*, was according to the law as stated, either justifiable or excusable," etc.  We submit that this instruction was wrong, and hold that the reasoning of the court in Carl Horne's case is conclusive upon this point.  1 Kas., 73, 74.

9. The instructions concerning the right of the jury to disregard the testimony of any witness in the cause "who had testified corruptly and falsely to any *particular* matter," does not, in our judgment, correctly state the rule of law.  3 Kas., 488.

10. The affidavits of the jurors Miller and Young were competent for the purpose offered, and should have been considered by the court.

*T. F. Rager*, county attorney of Neosho county, for The State:

1. The motion for a change of venue was properly overruled, and the application refused.  Facts, sufficient to show that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein, must be set forth in the petition; (§§ 174, 177 crim. code;) and those facts must be proven to the satisfaction of the court.

The petition in this instance does not set forth such a state of facts, and if it did there is not evidence sufficient in the affidavits offered in support of it, to satisfy any reasonable court or judge that such a state of facts existed, without considering the affidavits offered in opposition by the state.  But § 177 of the crim. code leaves the matter wholly within the discretion of the court, and being a matter of discretion with the court, is not reviewable on error.

2. There was no error in permitting the witness to answer the question whether deceased was intoxicated.  If the deceased was in a helpless condition it was perfectly competent for the state to show it, or as the appellant says, if "he was incapable of attack or defense."  2 Bishop, § 728; Whar. Crim. Law, §§ 970 to 980, 1010.

Nor in permitting defendant to be further cross-examined

by the state. He having placed himself upon the stand a willing witness he came within the rules governing other witnesses, and the state is allowed as broad a latitude in cross-examining him as it would any other witness. The matter is within the discretion of the court trying the case. 1 Greenl. Ev., §§ 431, 447, 449. The testimony of James Barnes was clearly admissible.

3. The court did not err in refusing to give instructions marked 1, 3, 4, 6, 7, 8 and 9. As to instruction No. 6 the law was properly given by the court in instruction 15.

The court in its general instructions had defined and explained the minor degrees of felonious homicide; and to omit to do so again in a particular instruction could not, as appellant claims, mislead the jury.

4. The language of the court in the instructions, "You are to decide whether the killing of James Curran by this defendant, was according to the law, as stated, justifiable or excusable," is not erroneous. The defendant had not denied, but on the other hand had admitted the killing of Curran, and attempted to justify. The jury were to determine whether the killing was murder, or any of the minor degrees of felonious homicide.

5. The court properly refused to consider the affidavits of the jurors Miller and Young as evidence on a motion to set aside the verdict. They having been duly sworn to perform their duties as jurors in this cause, should not be permitted to swear that they had violated their oath. The admission of such evidence would open a great avenue to fraud; and great mischief would result if verdicts were thus placed in the hands of a single juror. Such evidence should be excluded on the ground of public policy. 1 Greenl. Ev., §§ 252, 252a; 2 id., §§ 37, 41; 1 N. Y., 326; 5 Conn., 348.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellant was convicted of murder in the second degree in the district court of Neosho county,

and brings the case to this court by appeal. Various errors are alleged which will be considered in their order.

I. The court refused to grant a change of venue asked by the appellant. The accused supported his petition by the affidavit of himself and nine others. The facts stated in the petition, which was also the affidavit sworn to by all the affi-

1. Change of venue; prejudice of people. Practice.

ants, are briefly these: That the homicide had been the subject of violent and inflamatory remarks and discussions throughout the county; that unfair and unjust accounts of the homicide had been published in two of the newspapers of the county, of general circulation therein; that divers and sundry persons, actuated by malicious motives, had been busy circulating reports of the homicide for the purpose of prejudicing the people against the accused; and that, incited by these causes, a mob of five hundred persons, armed with fire-arms, had seized the accused, took him from the custody of the officers of the law, at the town of Osage Mission, and carried him some distance from the town, with the avowed object of putting him to death, and had assaulted and maltreated him. The counsel for the state filed a number of affidavits controverting the statements of the petition.

The statements in the petition are mostly made up of conclusions, and are not the definite statement of facts that the law requires. Neither the names of the persons who maliciously circulated the reports, nor the reports they circulated, are stated; the accounts published in the newspapers are not produced, nor is it stated in what papers they were published. The same observations may be made as to most of the affidavits presented by the state, and this was a necessary consequence of the general statements of the petition. The affidavits for the state show that the affiants live in different parts of the county, with a general acquaintance in their respective townships, and that whatever might be the feeling in Osage Mission, there was no prejudice against the prisoner in those parts of the county where they lived. The man who was killed was a workman on the railroad, and the mob was wholly composed of hands engaged in building the road, and

not of citizens of the county; that the citizens condemned the action of the mob, and that the persons composing it had left the county. The mob were prevented from accomplishing their purpose by the citizens. These affidavits satisfactorily and effectually dispose of any inference of prejudice indicated by the action of the mob. Taking the affidavits on both sides, and we think the court correctly refused the change of venue. Before we could reverse a case for a refusal of such a motion, we must be able to see that the decision was wrong. In this case we are strongly persuaded that it was right.

II. A witness was allowed to testify that the deceased was intoxicated at the time of the homicide. This was proper, as tending to show that he was incapable of attack or defense.

III. Horne was a witness on his own behalf, and after he had testified and left the stand, the court permitted the state
3. Practice; re-calling witness; impeaching. to recall him and re-cross-examine him. The object of the re-cross-examination was to lay the foundation for impeaching his testimony by contradicting it. The proceeding seems to be unobjectionable; 1 Greenl. Ev., § 447; but if not, the error was harmless, as the witness' answers were such that no advantage could be made of them. He did not recollect having had a certain meeting with James Barnes. Now if it was proven that he did have such a meeting, if such proof, from any cause should be legitimate, then the want of recollection of Horne did not show any want of veracity.

IV. The following testimony of James Barnes was objected to, and its admission alleged as error. Barnes testified that defendant asked him if he had seen Curran down at Kelley's saloon. Witness told him he had. Witness then
4. Animus and intent of pris-oner. remarked, "By God, we want to see him." McGill was with defendant at the time. This conversation took place fifteen or twenty minutes before Curran was killed. This was legitimate testimony, not, as counsel for appellant imagines, as impeaching testimony. It might have been so used if any foundation had been laid, but none had been. Horne had never been asked as to a conversation

between himself and witness Barnes. It seems that an effort was made to prepare the way for using the testimony as impeaching testimony also, but when Horne stated that he did not recollect meeting the witness the attempt was abandoned. But the testimony was perfectly competent to show that the accused was looking for the deceased a short time before he was killed, and as tending to show his state of mind. Being legitimate for this purpose it was properly admitted.

V. The next error alleged is in the refusal of the court to give certain instructions. The first one asked by appellant was not good law and was properly refused. The instruction is defective in not stating that the apprehended danger was menacing the accused at the time. As it stands it simply states that if one person has reasonable ground to believe that another has a design to take his life, and under that belief he kills that other, the killing would be justifiable. This is not law. There must not only be reasonable ground to believe such a design exists, but the person to execute the design must be accompanied by some attempt to execute it, or the person must at least be in an apparent situation to do so, and so induces a reasonable belief that he intends to do it immediately. The instruction is open to criticism on another point. It states that where recent threats and other circumstances which would tend to lead the defendant to believe that his life was in imminent danger, etc. Now the threats and circumstances must not only tend to lead to the belief, but they must force the belief upon the mind, and then the belief must be reasonable, and such as reasonable men act on. The instruction as asked was not only objectionable for three reasons as a proposition of law, but because these modifications were especially necessary in this case, if any instructions at all of this character were necessary, which may well be doubted.

*5. Instructions; excusable and justifiable homicide.*

The third instruction contains this proposition in words: "That the officers of the law when engaged in the performance of their official duties, are invested with a peculiar

9

prerogative of resisting, when so employed, and if the party resisted be killed in the struggle, the homicide is justifiable." If this be law then any resistance of an officer however slight justifies the officer in taking the life of any prisoner. The proposition so quoted is not in any manner modified by the remainder of the instruction; and this was a sufficient cause for rejecting the whole instruction. But the residue of the instruction is essentially vicious, as it has too close a resemblance to the part quoted.

The fourth instruction was refused. It is so obscure, uncertain and involved, that it ought not to have been given. The proper instructions to the jury on the points attempted to be made in this instruction are given in the one numbered fifteen. For the reasons already given there was no error in refusing to give instructions numbered 6, 7, 8 and 9. The instruction numbered 14 was properly refused. The rule was as favorably given in the next instruction as the appellant had a right to ask it. The appellant excepted to all the charge of the court, but specifies but three as grounds of error in this court. One is in paragraph 13. Taken by itself this paragraph would not be a fair guide to the jury, but taken in connection with other parts of the charge, it would not mislead the jury. The court in its charge used this expression : "You are to decide whether the killing of James Curran *by* *this defendant* was, according to the law as stated, either justifiable or excusable," etc. It is claimed that this expression that Curran was killed by defendant was prejudicial to him as assuming a fact upon which the jury were alone competent to pass, and the case of *Carl Horne v. The State*, 1 Kas., 73, 74, is cited in support of the claim. There are cases in which such an expression would be error; but this is not one. There was no dispute as to who killed Curran. The testimony on this point was abundant and harmonious. The defendant had just stated in his testimony that he had done the act, therefore it was no error in the court to speak of it as a fact. Some other errors in the instructions are suggested, but are not of a character to have wrought any prejudice to

Opinion of the Court.

the accused, and therefore will not be further noticed, except as to one paragraph of the charge of the court, which is as follows: "If the jury believe from the evidence that any witness has testified corruptly and falsely to any *particular* matter, then it is your duty to disregard the whole of the testimony of such witness." This does not correctly state the rule as laid down in *Campbell v. The State*, 3 Kas., 488.* There may be a difference between *material* testimony, and testimony on a *particular* matter. The record in the case discloses the fact that the only attempt made during the trial to impeach the testimony of any witness was that made by the state upon the testimony of the defendant Horne; therefore the instruction of the court must have applied to his testimony only. A careful examination of his testimony shows that all of it was *material*, so that it made no difference in the case that the court erred in the use of the word "particular" instead of using the proper word, "*material*." It was an error not prejudicial to the appellant, and does not authorize a reversal.

VI. On the motion for a new trial the appellant offered to read the affidavits of Robert Miller and John Young, two of the jurors who tried the case. These affidavits stated that

6. Verdicts—impeaching; affidavits of jurors.

the affiants had observed during the trial that there was a strong prejudice in the minds of the people of the community against said defendant; that this prejudice was discussed among the jurors in the jury-room; that affiants did not believe defendant guilty, but that if he was acquitted great bodily harm would be inflicted on him by a mob, and that it would be better for him to be found guilty than to run the risk of mob violence, and for this reason affiants agreed to the verdict. The court refused to permit these affidavits to be read, and we think correctly. Whether the affidavits of jurors may be received in any case to impeach their verdict is a question upon which there is much conflict in the decisions. The authorities on this point are collected and reviewed in the case of *Wright v. Illinois &*

[*SEE opinion of court, and foot note, in *Hale v. Rawallie*, 8 Kas., 142.—REPORTER.]

*Mississippi Telegraph Co.,* 20 Iowa, 195; and the court in that case lay down a certain principle which should govern in deciding where and under what circumstances the affidavits of jurors may be used to impeach their verdict. It is not claimed that the principles laid down are supported by all the decisions, for it is asserted that no principle can be laid down that is not in conflict with some of the authorities. In this case we are not under the necessity of determining any very difficult question. It is only to be said that no juror should be heard to contradict or impeach that which in the solemn discharge of a sworn duty he has asserted. Apply that to this case, and the affidavits were properly rejected. Affidavits of jurors showing misconduct of the jury in their retirement, stand on an entirely different footing, and their competency will be determined when the case arises. In the record we find no error that authorizes us to disturb the judgment rendered. Judgment affirmed.

All the Justices concurring.