LAWRENCE GANNON v. JOHN STEVENS.

1. IMMATERIAL ERRORS *will be Disregarded.* A court may erroneously allow irrelevant testimony to be introduced on the trial, and may also erroneously allow leading questions to be put to witnesses, and yet in some cases such errors of the court may not be of such a substantial character as to require a reversal of the judgment of such court.

2. CIRCUMSTANTIAL EVIDENCE; *Competency and Admissibility.* Where a party has no direct evidence to prove a certain fact in issue, but has to resort to circumstantial evidence to prove the same, great latitude must be allowed in the introduction of the evidence, and much that would otherwise be irrelevant will in such a case be both relevant and competent. For instance, where it becomes necessary (as in this case,) to show by circumstantial evidence who killed a certain horse, it may be shown

that the party charged with the killing had a motive as well as opportunity to kill the horse, by showing that the horse was in the habit of trespassing, and did immediately before the killing was done, trespass upon the corn crop of the party charged with the killing.

3. EXAMINING WITNESS; *Leading Questions.* A direct question put to a witness, although it may be leading in form, although it may be answered by yes or no, or by a simple affirmative or negative, if it is upon some preliminary matter merely introductory to something else, and does not call for an answer which will tend to prove or disprove any issue in the case, is generally not leading.

4. ———— Where it has been shown on the trial, as in this case, that a certain witness had testified in chief and on cross-examination on a former trial of this same case, and has since died, and where the following question was then asked the witness, to-wit: "Do you recollect her testimony in chief on the trial of that case?" Answer, "Yes." *Held,* that such question is not leading.

5. ———— But even where *nisi prius* courts allow leading questions to be asked, still, as such courts have such a wide discretion in allowing or disallowing leading questions to be asked, appellate courts can seldom reverse their decisions for allowing such questions to be asked. It can only be done where the *nisi prius* courts have manifestly abused their discretion.

6. ———— The court below permitted the plaintiff to put the following question to his own witness, and allowed the question to be answered, to-wit: "Do you recollect of testifying at Erie, that your uncle had an ax on his shoulder when he was leading the horse?" Answer, "I do not recollect." *Held,* that the court below erred in permitting this question to be asked or answered, but that the testimony embodied in the answer is not sufficiently prejudicial to the rights of the plaintiff in error (defendant below) as to require a reversal of the judgment.

7. EVIDENCE— *Question of Competency to be raised in Trial Court.* Where it is amply shown that a certain person, now deceased, had "testified" as a "witness" on a former trial of this same case, that she was examined in chief and cross-examined, and that her "testimony" was received by the court, and the point is made specifically for the first time in the supreme court, and was not made in the district court, it is not necessary to show more specifically that the testimony of said deceased witness was given under oath or affirmation.

8. ———— The death of such former witness was probably sufficiently shown before any evidence of what she had testified to was introduced, and hence the court below committed no error on that account in allowing said evidence to be introduced. But even if her death was not at that time sufficiently shown, still it was afterward and during the trial shown by evidence that proved the same beyond all doubt, and hence it

became wholly immaterial whether the court erred in allowing said evidence to be introduced or not.

9. DECEASED WITNESS; *Testimony of.* It is sufficient to prove the *substance* of what a deceased witness testified to on the former trial, and not necessary to prove his exact words.

### Error from Neosho District Court.

ACTION by *Stevens* as plaintiff to recover the value of a horse alleged to have been unlawfully killed by *Gannon.* Answer, general denial. The action was commenced before a justice, where *Stevens* had judgment for $185, and costs. *Gannon* removed said cause to the district court by petition in error, where the judgment of the justice was reversed, and the action retained for trial as on appeal. A trial was had before a jury at the April Term 1872. The charge to the jury, omitting the formal parts, was as follows:

"1st.—You are the exclusive judges of all of the facts in the case, and for yourselves must say what effect the evidence should have upon your minds in the making up of your verdict. All the circumstances surrounding the several witnesses should be duly considered in weighing, and deciding upon the weight of evidence.

"2d.—If in your examination of the testimony in this case you should be satisfied that any witness has testified falsely and corruptly in reference to any material fact, you should disregard the whole of the testimony of such witness.

"3d.—The defendant in this case is charged with a tortious act, that of unlawfully killing plaintiff's horse. In cases of this nature all persons who aid, abet, or assist in the commission of the tortious act, are regarded as principal actors, and are severally as well as jointly responsible to the injured party for damages sustained by such tortious act.

"4th.—The plaintiff has called witnesses for the purpose of proving what Mrs. Patrick Gannon, now deceased, testified to before the justice of the peace in a former trial of the case. While such testimony is before you, and properly, yet you are to consider it with due caution, looking to the character of the witnesses who testified to the declaration of deceased, their recollection as to the facts which they attempt to detail, together with all of the surrounding circumstances."

Verdict for the plaintiff for $150 damages. New trial

29—13 KAS.

refused, and judgment on the verdict. *Gannon* brings the case here by petition in error.

*C. F. Hutchings,* for plaintiff in error:

1. The action was brought by Stevens claiming damages for a *horse* (gelding) alleged to have been killed by Gannon. Upon the trial Stevens, after testifying to the ownership, death and value of the horse, produced as a witness a young lad, Patrick Gannon, 13 years old, nephew of defendant, who, after a thorough examination, failed to throw any light on the matter, and spoke only of seeing defendant at one time leading a *mare,* and that he "thought it was his own mare." Although it did not appear that Stevens was taken by surprise, or had any reason to expect the witness would testify otherwise, he (Stevens) was allowed to impeach, contradict and stultify his own witness both by cross-examination, and by the testimony of another witness. His counsel asked the boy "if he recollected testifying at Erie that his uncle had an ax on his shoulder when he was leading the horse?" This was a direct attempt to impeach and vilify their own witness. They did not pretend that they were misled by the witness. But if they could be allowed to impeach their own witness, they could not be allowed to prejudice us by showing what he *had sworn to* before. That certainly was not competent testimony.

2. Stevens was permitted to prove by witness Miller, what the testimony of one Mrs. Patrick Gannon had been before the justice when the case was originally tried. This testimony was objected to by Gannon, on the ground that no foundation had been laid for the introduction of such testimony. We invoke a careful scrutiny of the record on this point, as we think the district court erred in admitting this testimony. Let us see what foundation had been laid for the introduction of this testimony. The only evidence of the death of Mrs. Patrick Gannon was that of plaintiff Stevens: "I knew the wife of Pat. Gannon; she testified before 'Squire Williams in this case; she is dead; I did not see her die, nor

see her after she was dead; I saw people going there to the funeral of old Pat. Gannon's wife; I have not seen her since." There was no evidence whatever as to the nature of the oath, if any, that was administered to her. Although four years had elapsed since the trial before the justice, the only proof of means of recollection, or capacity to reproduce her testimony required by the court, is in the testimony of Miller, as follows: "I saw a woman at that trial *who said* she was the wife of Pat. Gannon; she testified in that case, *I think;* I remember her testimony in chief and on cross-examination." Upon this foundation the witness was allowed to give, not the testimony of Mrs. Gannon in her words, but his opinion of what her testimony proved, and was even allowed to say what she meant by her language, and construe it for the benefit of the court and jury, as witness the following: Miller—"She spoke about her boy, and said he was present when defendant went by with the horse and ax." Stevens' Counsel—"What boy did she refer to?" Miller—"It is Patrick Gannon, the same boy that testified before Williams, and testified here in this case to-day." In the cross-examination of Miller, his *want* of means of knowledge is further shown: "The trial was in 1868. I took no minutes in writing. I have talked with the attorneys of plaintiff about the testimony of Mrs. Gannon. I think I have mentioned the case once or twice before since it was tried," (four years before.)

Next comes Williams, the justice, who is brought to prove the same as Miller, and after putting to him several questions about his ability to testify "substantially," all of which he answered "yes," he is allowed to give his version of Mrs. Gannon's testimony. He says, however, "I cannot remember what she said on cross-examination. I do not think I have used one of the words she used when she testified before me. I could not testify whether she said it was a *horse*, or a *mare*. I do not recollect the testimony except what I used in making up my judgment. I do not recollect what she said about bad feeling between herself and defendant; but

her actions showed it. I think there were several questions asked the witness on that trial that she did not answer."

It is well settled that where a party desires to introduce secondary evidence, he must lay the foundation himself, and must show that it is the best evidence procurable. This rule is much more inflexible when the attempt is made to introduce the evidence of a deceased person taken in a former trial, than in cases where the contents of lost written instruments are sought to be introduced. In this case *the death* of Mrs. Patrick Gannon was not satisfactorily shown. There was not one particle of evidence to show that any legal oath, or in fact that any pretense of an oath, was administered to her; and without the oath there is nothing to distinguish her statements from common hearsay. Instead of its appearing affirmatively that Miller and Williams had the requisite knowledge to enable them to testify concerning the alleged former evidence of Mrs. Gannon, it appears that they had no such knowledge, and they do not pretend to give even a "single word" that she said, but simply what they considered to be the *substance* of her testimony. It is not shown that Miller had any interest in the case, or any peculiar knowledge of such matters. He was simply an idle spectator of the trial; and after four years comes in and is allowed to give his impression of what Mrs. Gannon testified to. Williams was the justice, and says he remembered only what testimony "he used" in making his judgment. Williams might conclude that Mrs. Gannon's testimony proved one thing; the jury might come to quite another conclusion, if they heard her testimony and not Williams' conclusions on it. The rule ought to be strictly enforced concerning such testimony. The weight of the testimony of a belligerent Irish woman, who had hard feelings towards the defendant, and who refused to answer many questions, as the testimony shows Mrs. Gannon did in this case, would be materially increased when told by a sober and staid old justice; and in fact, when you deprive the jury of the advantage of seeing witnesses face to face, and noting their personal appearance and their demeanor on

the witness-stand, you deprive them of one of the surest avenues to the truth. Hence we say the rule should be a strict one, that allows the statements of a witness at second-hand to be used in evidence. (3 Wash., 440; 1 Phil. Ev., 200; 7 Blackf., 10; 18 Pick., 434; 6 Met., 261.) It must be shown that the witness was sworn. 1 Spencer, (N. J.) 66. The witness refused to answer questions, and was not fully examined at the former trial. (6 Watts & Serg., 58.)

3. The issue was, whether defendant had killed plaintiff's horse. To prove this issue on his part, plaintiff was allowed to testify that defendant was raising a crop of corn, and that said crop had been trespassed upon shortly before plaintiff's horse was killed. This was error, and prejudicial. It is by no means a logical deduction, that because a man has a corn crop, or because his corn crop is trespassed upon, that he will kill or has killed a horse.

4. Many of the questions put to plaintiff's witnesses, on examination in chief, were so very suggestive and leading as to be incompetent for this reason alone. This question put to the plaintiff is a sample of these leading and suggestive questions: "State if any one came to you from the defendant to notify you that this horse or any stock was trespassing on his corn?" This, and all like questions were allowed over the objection and exception of defendant.

5. After Stevens' had closed his case, Gannon was introduced in his own behalf, and asked this question: "Did you ever lead a horse of Mr. Stevens' by Patrick Gannon's, and say you had caught the old prisoner and would fix him?" This was for the purpose of giving a direct negative to what was alleged to be the testimony of the deceased witness. The court however ruled out this testimony. It requires no argument to show our right to disprove the truth of the alleged testimony of Mrs. Gannon, yet the court refused to allow us to do so.

Although the court had refused to allow Mr. Gannon to deny the alleged testimony of deceased Mrs. Gannon, the court allowed the most extraordinary cross-examination of

the witness, to-wit: "Did you ever stand within five feet of any man in that neighborhood in that or any other year and see him strike a horse with an ax?" We know of no rule which permits the cross-examination of a *party* as to matters that it would not be competent to cross-examine a witness who is *not a party*. In this case the plaintiff was permitted to go outside of the direct and proper cross-examination and ask defendant Gannon all manner of questions to make out plaintiff's case, or to prejudice the defendant before the jury.

6. Plaintiff Stevens and his witness Miller were recalled in rebuttal, and allowed to testify concerning the testimony of Gannon before the justice in 1868. No foundation for impeaching Gannon had been laid. If this testimony was introduced on the ground of admissions against interest, it should have been in chief, and not in rebuttal; and in any event the questions are so grossly leading and suggestive, and being put to a witness who had certainly drawn suspicion on himself, that they were incompetent for that reason alone. Here is a specimen: Counsel producing witness to his witness—"State whether or not the defendant at that trial stated that he drove the horse down to Pat Gannon's house, and caught him there?" Witness—"He did." Counsel—"State whether or not the defendant at said time and place stated that he stood within five feet of the horse at the time he was wounded and saw him struck with an ax?" Witness—"He did."

7. The instructions are all in the record. We ask particular attention to these instructions. We claim that the application of the maxim, *Falsus in uno, falsus in omnibus,* made by the district court was erroneous. The jury are the exclusive judges of all the facts, and of the credibility of the witnesses. The court has no right to withdraw any competent testimony from the jury, nor to decide as to the credibility of any witness. The jury are to apply the maxim according to their own judgment. They are at liberty to believe any portion of the witness' testimony, especially if corroborated by other testimony or circumstances; and they are not, as a matter of law, bound to disbelieve any witness. It was so

decided in *In re Santissima Trinidad*, 7 Wheaton, 283; *Hargraves v. Hiller's Adm'r*, 16 Ohio, 344; *State v. Williams*, 2 Jones, L. R., 257; *Mercer v. Wright*, 3 Wis., 645; *Knowles v. The People*, 15 Mich., 411; *Lewis v. Hodgdon*, 17 Maine, 267. We refer especially to *Mead v. McGraw*, 19 Ohio St., 55, and *Hale v. Rawallie*, 8 Kas., 136.

8. We claim as applicable to the testimony in this case, that all parties "who aid, abet or assist in the commission of the tortious act" are *not* liable as principals, and the court should have made some such distinction as those who *willingly or purposely* aid, abet, etc.; for if a person unwittingly and unintentionally aid, he is not liable.

9. And again: Whether Mrs. Patrick Gannon was dead, whether this case had been tried before a justice, whether Mrs. Patrick Gannon testified at that trial, and what she testified to, were alike questions of fact, solely for the jury; yet the court virtually instructed the jury that Mrs. Patrick Gannon was dead, and that she testified before the justice. The court might with the same propriety have instructed the jury what she testified to. Indeed, the court did say, "*such* testimony is before you, and properly," that is, testimony is before you showing what she did testify to: and this latter remark of course neutralized any argument defendant may have made touching the reliability of this testimony, and acted, as it was intended, to ratify all the court had done in admitting such testimony, and destroyed all that counsel for defendant had done in cross-examination to show the improbability of a mere spectator in a justice's court remembering the testimony of a witness four years without memoranda or other aid to memory. It is very evident that the jury in this case based their verdict upon the alleged testimony of Mrs. Patrick Gannon, and the instructions *of fact* given by the court; and we submit that a careful examination of the testimony in this case in the light of human probability and belief will not justify the conclusion of the jury. A new trial should have been granted.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John Stevens against Lawrence Gannon for the sum of $250 as damages for the killing of a certain horse. The main question tried in the court below, if not the only contested question, was whether Gannon did in fact kill said horse. All other questions in that court grew out of the trial of that question. In this court the plaintiff in error (defendant below) has raised many questions founded upon supposed irregularities claimed to have occurred during the trial of the case in the court below. We do not think that it will be necessary for us to discuss all of the questions separately, for many of them may be discussed in groups, and some of them need not be discussed at all. In general terms, therefore, and without going into details, we would say that we think the court below erroneously permitted some irrelevant testimony to be introduced on the trial, and also erroneously permitted several leading questions to be put by the plaintiff below to his own witnesses. But still we think that none of these errors were of such a substantial character as to require a reversal of the judgment of the court below. Errors like these are often committed in the trial of causes in *nisi prius* courts, and yet it is seldom that any such errors are complained of in this court, and seldom that a judgment could be reversed on account of them. This case, as said before, was for killing a horse. No person except those who participated in the act saw the horse killed; and hence the plaintiff had in the nature of things to resort to circumstantial evidence to prove his case; and in such cases great latitude must always be allowed in the introduction of testimony. And therefore much of the evidence which the plaintiff in error supposes to be irrelevant testimony, and much that would under other circumstances be in fact irrelevant testimony, was, under the circumstances of this case, both relevant and competent. For instance, it was both relevant and competent for the plaintiff to show that the defendant had

some motive as well as an opportunity to kill the horse by showing that the horse was in the habit of trespassing, and did, immediately before he was killed, trespass upon the defendant's corn crop. But even if said evidence was both irrelevant and incompetent, it is still strange that the plaintiff in error should now ask us, as he does, to reverse the judgment of the court below on account of the following question and answer, to-wit: "*Question:* State what you know about stock trespassing on that corn at the time?" "*Answer:* I don't know. I never saw any stock in his crops." The witness did not at any time state that he knew anything about the matter, and yet the plaintiff in error asks us to reverse the judgment on account of his testimony.

With regard to leading questions we would say, that many of the questions put to witnesses which the plaintiff in error supposes were leading, were not leading. It is not every question that is put in a direct or leading form, or that may be answered by "yes," or "no," or by a simple affirmative or negative, that is leading. To ask an impeaching witness directly if he knows the general character of the witness to be impeached for truth and veracity, is not leading. And generally a direct question upon any preliminary matter, merely introductory to something else, and not calling for an answer which will tend to prove or disprove any issue in the case, is not leading. For instance, after it had been shown that Mrs. Patrick Gannon had previously testified in chief and on cross-examination, on a former trial of this same case, and that she had since died, the following question was asked, to-wit: "Do you recollect her testimony in chief on the trial of that case?" *Answer:* "Yes." This question was not leading. It did not call for any testimony which tended to prove or disprove any of the issues in the case, but simply called for the recollection of the witness, a purely preliminary matter, introductory of what was to follow. But even where *nisi prius* courts allow leading questions to be asked, still as such courts have such a wide discretion in allowing or disallowing such questions, appellate courts can seldom reverse their de-

cisions for allowing such questions to be asked. It can only be done where the *nisi prius* courts have manifestly abused their discretion. The plaintiff below, Stevens, introduced as a witness Patrick Gannon, a nephew of the defendant below. The witness testified at one time he saw the defendant leading a mare which he thought was the defendant's own mare. He also said in his testimony, "I do not recollect that he had any ax." The plaintiff then asked the witness the following question: "Do you recollect of testifying at Erie that your uncle had an ax on his shoulder when he was leading the horse?" *Answer:* "I do not recollect." This question was allowed to be asked and answered, over the objections and exceptions of the defendant. Of course, the court erred in allowing this question to be asked and answered. The witness was the witness of the plaintiff; and the plaintiff did not even claim that he was surprised, or that the witness testified differently from what he had expected, or that the witness did not testify to the truth, or that the witness had the slightest prejudices in the case. The question is objectionable for at least three reasons: first, it is leading; second, it is an attempt to prove the declarations of a person not a party to the record, nor interested therein, nor in privity with any person interested therein; third, it is an attempt to lay the foundation for an impeachment of the plaintiff's own witness without any reason being given therefor. But still we do not think that the defendant's rights were materially prejudiced by the error of the court. The witness himself stated nothing in response to this question in contradiction or corroboration of what he had already stated. His answer really amounted to nothing. And there was no attempt to prove by any other witness what this witness had ever said at any other time or place.

The plaintiff introduced evidence over the objections of the defendant to show what Mrs. Patrick Gannon had previously testified to on a former trial of this same case. The defendant claims that the evidence was erroneously admitted for the following reasons: *first,* that it was not sufficiently shown that Mrs. Gannon had died since the former trial; *second,*

that it was not sufficiently shown that a legal oath had been administered to her before her testimony was given; *third*, that the witnesses proving her testimony were not sufficiently qualified therefor — that is, that they were not able to give her exact words, but could give only the substance of her testimony; *fourth*, that it was shown that Mrs. Gannon *refused* to answer several questions on the former trial. None of these reasons are sufficient. The first, second and fourth are in fact superimposed upon very slender foundations. They are in fact not true. Nor were such reasons specifically urged in the court below. If such reasons had there been urged in the trial court, further evidence probably could have been supplied and probably would have been supplied. Changing the order of the first two reasons, and taking up the second one first, we would say that it was amply proved by different witnesses that Mrs. Gannon "testified" as a "witness" at the former trial of this case; that she was examined in chief and cross-examined, and that her "testimony" was received by the court. Now to "testify" under such circumstances certainly means, to be examined as a witness *under oath of affirmation.* (See Burrill, Bouvier, Webster, and Worcester's Dictionaries, *"Testify."*) Returning now to the first reason urged against the introduction of said testimony: before any evidence was introduced to show what Mrs. Gannon had formerly testified to, it was shown that the plaintiff and Mrs. Gannon lived in the same neighborhood, and then the plaintiff testified as follows: "I knew the wife of Pat. Gannon; she testified before 'Squire Williams in this case; she is dead; I did not see her die, or see her after she was dead. I saw people going there to the funeral of old Pat. Gannon's wife; I have not seen her since." This evidence was not objected to. After it was shown what Mrs. Gannon had testified to on the former trial, the defendant, who was also a neighbor of the plaintiff and of Mrs. Gannon, and a brother-in-law of Mrs. Gannon's, became a witness, and testified as follows: "I knew Mrs. Patrick Gannon, deceased, in her lifetime. I remember the trial of this case

before Esquire Williams, in Erie township. At that time Mrs. Gannon and I were on very unfriendly terms. I was present a little after she died. She sent for me before she died." We think it is evident beyond all doubt that Mrs. Gannon was dead at the time of the last trial of this case in the district court, and whether her death was sufficiently shown before the evidence of what she had formerly testified to was introduced, we think is now wholly immaterial; but still we are inclined to think that for the purposes of this case her death was sufficiently shown before any evidence of what she had formerly testified to was introduced.

As to the third reason given why said evidence should have been excluded we would say, that we think it was sufficient to prove the substance of what Mrs. Gannon testified to on the former trial, and not necessary to prove her exact words: 1 Greenl. Ev., §§ 165, 166; 1 Phillips' Ev., (5 Am. Ed., with Cow. & Hill's and Edward Notes,) marginal page 395, et seq., note 115. This we think is the law, both upon reason and authority. The reasons for this being the law we think are so obvious that it is not necessary to state them. There was not a particle of evidence tending to prove that Mrs. Gannon *refused* to answer any question put to her on the former trial; and the claim that there was any such refusal is now made for the first time in this court. The evidence upon which we suppose this claim is made is the last portion of the evidence of the last witness that testified with regard to Mrs. Gannon's testimony, and is as follows: "I think there were several questions asked the witness on that trial that she did not answer." If this can be construed into a *refusal* to testify, or a refusal to answer questions, why was not the point made in the court below? Why did not the defendant move to strike out all the evidence concerning Mrs. Gannon's testimony? Or why did he not ask the court below to instruct the jury to disregard it? He is too late now to raise any question concerning it. From anything that appears in the record the questions which Mrs. Gannon did not answer may have been withdrawn by the party ask-

· ing them, or the court may not have permitted them to be answered. The court below did not refuse to allow the defendant to disprove Mrs. Gannon's testimony.

The cross-examination of the defendant was a proper cross-examination. And indeed the defendant had a very fair trial in every respect. The application of the maxim, *falsus in uno, falsus in omnibus*, was a proper application of that maxim according to the decisions of this court. (*Campbell v. The State*, 3 Kas., 488; *The State v. Horne*, 9 Kas., 131.) In the judgment of the writer of this opinion, however, it is unfortunate that such decisions were ever made, and he thinks they should be overruled: *Mead v. McGraw*, 19 Ohio St., 55, and cases there cited; *Paulette v. Brown*, 40 Mo., 52, 57, et seq.; *Blanchard v. Pratt*, 37 Ill., 243, 246; *Callahan v. Shaw*, 24 Iowa, 441, 447. I shall certainly never be in favor of reversing a judgment of the district court for *refusing* to give such an instruction as the 2d one *given* in this case. The instruction referred to is as follows: "If in your examination of the testimony in this case you should be satisfied that any witness has testified falsely and corruptly in reference to any material fact, you should disregard the whole of the testimony of such witness."

The following instruction was not erroneous, to-wit: "In cases of this nature all persons who aid, abet, or assist in the commission of the tortious act, are regarded as principal actors, and are severally as well as jointly responsible to the injured party for damages sustained by such tortious act." The 4th instruction was not erroneous, or at most it was not so erroneous as to require a reversal of the judgment. That Mrs. Gannon was dead, there can be no doubt. The evidence sufficiently showed it, and there was no conflict of evidence upon this point. Her evidence was properly presented to the jury for their consideration, and the court properly instructed the jury to consider it with due caution. They were not told to believe it or disbelieve it, nor to believe or disbelieve any portion of it; nor were they told to believe or disbelieve any portion of the evidence of the witnesses who

testified with regard to it, except possibly they were told inferentially that Mrs. Gannon was dead, and this the defendant himself admitted and testified to as a witness on the trial of the case.

We have already given this case more time and consideration than it merits, and shall therefore consider it no further. The judgment of the court below will be affirmed.

All the Justices concurring.