No. 37,280

In re Estate of Addie Cross, Deceased (LEOTA REITER, FRANK CROSS, CLARA PARKER, WILLIAM CROSS, ARMOUR CROSS, CHARLES EDWARDS, CORA BEVINGTON, FRANK EDWARDS, GEORGE EDWARDS, LAURA MAE CARTER, ED P. SHAW, GEORGE SHAW, LIZZIE HEMKIN, GRACE KERR, BRADFORD SHAW, and GRACE SHAW, *Appellants*, v. ROY CROSS and ZELMA CROSS, *Appellees*.)

(201 P. 2d 1052)

Opinion filed, January 22, 1949.

*R. L. Hamilton* and *Ralph H. Noah,* both of Beloit, argued the cause and were on the briefs for the appellants.

*George E. Teeple,* of Mankato, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding to probate a will. Objections were filed by some of the heirs of testatrix. The probate court admitted the will to probate. On appeal, the district court ordered it admitted. The protesting heirs have appealed.

The petition to probate was in the proper form. Some cousins of testatrix in one group and some half-brothers and half-sisters in another group each filed objections to the probate and alleged that at the time of executing the alleged will testatrix was of unsound mind and incapable of knowing or understanding the contents of the will and it was executed under undue influence of the devisees named therein. The two objections were heard together.

Some of the facts are undisputed. The testatrix Addie Cross was a maiden lady. She came to Kansas with her father when she was a young girl. Her father and mother had been separated in Illinois. He never remarried and Addie Cross was his only child. Her mother had remarried in Illinois and had five children, three boys and two girls. These half-brothers and sisters, together with the children of one deceased brother, are one group of objectors to the probate of this will; the other group consists of some cousins of Addie, the children of her father's brother and sister. Her father died June 6, 1925. In his will he left Addie $10,000 in bonds and his residence in Jewell City. He also provided that the rest of his estate other than some specific bequests should be paid to the executor of his will and held for the benefit of Addie the proceeds to be used for her benefit, and upon her death she was given full power to make whatever disposition of the trust fund she should consider equitable and right in the premises. The inventory of her estate shows a little over $10,000 in bonds, a few thousand dollars cash in banks, $15,000 in the trust fund and the house and lot which she used as a residence. In her will she left all her property to a cousin, Roy Cross, and his wife, Zelma Cross, share and share alike. Roy Cross was named executor and offered the will for probate. As the issues were presented in probate court, Roy Cross, the executor, was on one side and a group of half-brothers and sisters and cousins on the other.

Throughout the hearing in the probate and district court and in this court a great deal of emphasis is placed upon an attack which Addie Cross sustained in the latter part of November, 1939. Her trouble was diagnosed by the doctors as hardening of the arteries and thrombosis. On December 12, 1939, she entered Major Clinic, a mental hospital, in Kansas City, Mo. She remained there until February 14, 1940, when Zelma Cross took her back to Jewell City. On April 25, 1940, Addie made the will which is the subject of this litigation. She died of a cerebral hemorrhage on February 17, 1944. On March 10, 1944, Roy Cross petitioned the probate court for the probate of the will and the objections were filed, as already noted. The case was heard in probate court on June 1, 1944. Honorable Miles Elson, a practicing attorney at Smith Center, was named judge pro tem because Honorable A. Teeple, a lawyer at Mankato, who was the probate judge, had drawn the will and it became apparent that he would be a witness for the proponents. He did

testify for the proponents, at the hearing in probate court. The probate court ordered the will admitted to probate, whereupon the objectors appealed.

The case was heard in district court on July 10, 11 and 12, 1946. A transcript of evidence was filed on January 27, 1947. After the transcript was filed the parties filed written abstracts and briefs and it was orally argued November 7, 1947. On June 12, 1948, the trial court filed its findings of fact and conclusions of law in which the will was ordered admitted to probate. Motions to set aside findings and for a new trial were heard January 17, 1948. They were overruled, judgment entered and the case has been appealed to this court.

The objectors point out here that the trial judge remarked at the time he made his findings of fact and conclusions of law that he had read the transcript carefully and had reached a conclusion. They argue that since the court read the transcript and reached the conclusion as to facts that we should do the same, and examine the abstract and weigh the evidence as the trial court did. We shall pay some attention to that point later in this opinion.

The real burden of the appellant's argument is that the medical testimony they furnished showed that when Addie had her attack in November of 1939 her mentality was so impaired that she never after that possessed the required mental capacity necessary to make a valid will. The proponents furnished several witnesses who testified she was able to carry on ordinary business transactions. At the outset we shall take note of the evidence of a witness, Irma Nixon, who was an employee of the bank where the trust fund was kept and with whom Addie did most of her banking business. She had known Addie for many years and had been an officer at the bank with whom Addie came most in contact. She did not know much about the stroke Addie was alleged to have suffered; she did know, however, that she went to Kansas City, but did not know for sure when she returned. She testified that Addie talked to her about making a will in the directors' room of the bank when no one else was present and she said she wanted to make a will like her father had done so that when she was gone she would know her property would go where she wanted it; that Addie talked to her a number of times about the matter; she told Addie the bank did not write wills, but she should secure the services of an attorney, and Addie asked her to call Mr. A. Teeple, who was an attorney

at Mankato; that Mr. Teeple came to Jewell City about 9 o'clock and stopped and picked the witness up; that the witness took her typewriter and went to Addie's home. She testified that she introduced A. Teeple to Addie and that Addie said she wanted to make a will; that Mr. Teeple asked her about her property she had and she said she had her bonds and things and she owned the house she lived in and there was a trust fund at the First National Bank; that he then asked how she wanted to leave her property and she said she wanted it to go to Roy and Zelma Cross, equally, and she wanted Zelma to have half; that Mr. Teeple dictated the will there in the presence of Addie and she wrote it on the typewriter. The witness asked Addie if she did not want to give anything to the rest of her relatives and Addie said she wanted it to go like she had said. The witness was not sure that the given names of the relatives were mentioned but they were all mentioned as a group, that is, the cousins and half-brothers and sisters, and she still insisted that she wanted all her property to go to Roy and Zelma Cross. This witness then testified, as follows:

"Q. Now, did my father ask her anything about who her relatives were, other relatives? A. Yes.

"Q. All right, what did she say? A. She said she had, she named these cousins, and that she had these half brothers and half sisters, but she said, 'I have helped them.'"

This witness was also asked what her opinion was as to Addie's ability to transact ordinary business and she testified she thought she had that ability.

Several other lay witnesses were called, and testified as to her ability to transact ordinary business.

The first point argued by the objectors is that the court erred in the admission of testimony and in refusing to strike out testimony.

The first point argued here by them is that the court erred when it permitted Irma Nixon to testify that in her opinion Addie had the ability to transact ordinary business and that she had the mentality to know her relatives. Objectors argue that this information was given by the witness without her having had contact enough with Addie to be able to form such an opinion. They cite authorities where we have held that the opinions of this sort of a witness must be based upon facts sufficiently definite to permit the witness to be able to give a correct opinion. (See *Fish v. Poorman,* 85 Kan. 237, 116 Pac. 898, and *Gorman v. Hickey,* 145 Kan. 54, 64 P. 2d 587.) There is no doubt about that being the rule.

We have examined this record, however, and find that all of the people whose opinions were offered here had been given an opportunity to observe the testatrix. They were neighbors, business people, school teachers, just the kind of folks one finds in not too large a western Kansas town. Some of them had visited her at the store; some of them visited with her on the streets; some of them visited with her in her home. The witness who testified about the drawing of the will had done considerable banking business for her. This court will not say that a person to testify as to the ability of a person to transact ordinary business must have an intimate, close, personal contact with the person whose mentality is being questioned. Furthermore, the testimony of this witness from the bank, if the court believed such testimony, was enough to sustain this judgment if there had been no other witness. It would be difficult to think of much more opportunity being given a person to judge another's mentality. The testatrix talked to her several times at the bank, then when the scrivener came to her home and she introduced him to Addie, Addie said "I want to make a will." She knew what property she had and knew who her relatives were.

The rule is that the test of mental capacity to make a will is—

"The test of mental capacity to make a will is that the testator know what property he has, know those persons who are the natural objects of his bounty, and be able to make a reasonable and understandable disposition of such property."

(See *Anderson v. Anderson,* 147 Kan. 273, 76 P. 2d 825, syl. ¶ 1.) Also

"The test of competency to make a will is that the testator know and understand what property he has, know about his relatives and others who may be the objects of his bounty and be able to direct and make disposition of his property with understanding and reason."

(See *In re Estate of Gereke,* 165 Kan. 239, 195 P. 2d 323, syl. ¶ 1.)

Counsel for the objectors state in their brief:

"In the present case there is no testimony that would indicate that Addie Cross knew or understood the objects of her bounty, particularly her destitute half brothers and half sisters, or that she knew and understood the nature and extent of her property, or that she knew and understood the disposition which she purported to make."

It is difficult to understand why such a statement is made in a brief when the record discloses the testimony such as that given by witness, to which reference has just been made.

The next witness was the probate judge pro tem, who had heard the case in probate court. It appears that when the parties were about to go to trial in probate court no stenographer was available. There was some colloquy amongst counsel and the probate court in which the counsel for the objectors demanded that the evidence be taken by a reporter. No reporter was available, however, and the contestants did not ask that the case be continued until one would be available. In other words, they proceeded without a reporter. Before the case came on to be heard in district court Mr. A. Teeple, who had drawn the will, had died. At the trial in district court the proponents of the will offered the probate judge pro tem and asked him to state what Mr. A. Teeple, the scrivener, testified to in probate court. They first showed that Mr. A. Teeple was dead and that no record had been taken of the evidence in probate court and that the witness being offered had been the probate judge pro tem and he had heard the testimony of Mr. A. Teeple. The objectors objected because it was hearsay and that the only way evidence of that sort could be introduced would be for the written record of it to be furnished and for the further reason that the witness should be asked to repeat specific questions and answers; that is, he must state exactly what the witness in trial court testified to by way of questions and answers. These objections were overruled and Mr. Elson testified to about the same effect as the witness, Irma Nixon, had testified. The testimony was about what is recognized by Jones on Evidence, as follows:

"The most serious objections to the admission of hearsay evidence in general are that no opportunity has been given for the cross examination of the declarant, and that his statements were made without the sanction of an oath. In those cases where these objections are removed, there is good reason for the relaxation of the strict rule forbidding hearsay testimony. It has long been settled, as one of the exceptions to the general rule, excluding hearsay that the testimony of a witness given in a former action or at a former stage of the same action is competent in a subsequent action or in a subsequent proceeding in the same action where it is shown that the witness is dead or that a valid legal reason exists for his nonproduction, that the parties and questions in issue are substantially the same, and that such former testimony can be substantially reproduced upon the second hearing." (2 Jones on Evidence, 1913 ed., sec. 336, p. 780.)

See, also, *Gannon v. Stevens*, 13 Kan. 447; also *Solomon Rld. Co. v. Jones*, 34 Kan. 443, 8 Pac. 730, 22 C. J. 442.

We hold it was proper for Judge Elson to be permitted to testify as to the testimony of Mr. Teeple when the case was tried before him as probate judge.

The objectors next argue that the court erred in his rulings and decisions as to the mental requirements necessary for a valid will. The record does not disclose, other than the findings of the trial court, what mental requirements were held to be necessary for a valid will. However, the sufficient mental requirements were established by the proponents. We are unable to agree with the objectors on this point.

What has already been said disposes of the objectors' argument that the court erred in overruling the demurrer of appellants to the evidence of appellees.

There are further arguments made as to motions of the objectors for particular findings of fact. We hold they are without merit.

Objectors also argue that the testatrix was limited, on account of her father's will in the disposition she could make of the trust fund, to what was equitable and right in the premises. They argue the probate court and the trial court and now this court should hold that Addie was limited in her disposition of the trust fund by the language of her father's will and we should examine whether the disposition she made of her property was equitable and right in the premises. As a matter of fact, under her father's will she could make whatever disposition she thought was equitable and right.

When we hold that she had sufficient mental capacity to make a will, we hold that whatever she thought was equitable and right was equitable and right as far as the will was concerned.

The court made the following findings of fact:

"1. On April 25th, 1940, when the will in question was made and signed Addie Cross knew what property she owned and that she was given by the will of her father the right to dispose of the property left to her in trust by her father's will.

"2. On April 25th, 1940, before the will was drawn Addie Cross told Judge A. Teeple, the scrivener who drew her will, of her property and how she wanted to dispose of it.

"3. Judge A. Teeple drew the will disposing of the property of Addie Cross as requested by her.

"4. Addie Cross on April 25th, 1940, when the will in question was made, signed and acknowledged by her, had sufficient mental capacity to make the will."

These findings were supported by the evidence and the will was properly ordered admitted to probate.

The judgment of the trial court is affirmed.