No. 32,076

Gladys Opal Geopfert, a Minor, by Her Next Friend, Della Foley, *Appellee*, v. Cyrus Geopfert and Amos H. Leech, as Administrator of the Estate of Theodore Geopfert, Deceased, *Appellants*.

(41 P. 2d 741)

Opinion filed March 9, 1935.

*John C. Waters* and *Edward Rooney*, both of Topeka, for the appellants.
*A. C. Wilson*, of Oskaloosa, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to contest a will, for partition of the real estate belonging to the decedent, and for an accounting of certain personal property.

One J. F. Geopfert, who resided in Jefferson county, died in 1911, testate. He gave specific bequests to each of his four sons and made them residuary legatees. One of the sons died shortly after his father, leaving the brothers as his sole heirs. Orlin Geopfert died in 1913, and the plaintiff, Gladys Opal Geopfert, is his sole surviving heir. Shortly before his death, the father had conveyed lands to his sons Cyrus and Theodore. Shortly after his death these two brothers made some exchange of deeds so that in the event of the death of one, the other should succeed to all of the property of the decedent. We are not concerned with the legal effect of such deeds. Later Cyrus married, and an attorney was consulted, and

shortly thereafter, under date of May 5, 1918, the two brothers joined in a will by the terms of which Cyrus gave one-half of his property to his wife and one-half to Theodore. Theodore, by the will, gave all of his property to Cyrus. The wife of Cyrus consented to the terms of this will. She subsequently died, and Cyrus remarried. The second wife never consented to the terms of the will, although that is not material here.

On September 13, 1931, Theodore Geopfert died, being the owner of about 180 acres of land, personal property valued at about $500, and the alleged owner of a cause of action against his brother for an accounting for farm rents and profits. The above-mentioned will was admitted to probate. Under its terms, no executor was named and the defendant, Amos Leech, was appointed administrator with the will annexed and duly qualified.

Plaintiff, by her next friend, brought an action as above indicated, and from a judgment in her favor the defendants appeal, the assignments of error presented covering two propositions, i. e., that the trial court erred in not sustaining a demurrer to plaintiff's evidence, and that the court's findings are not sustained by substantial evidence.

Plaintiff's evidence showed that after the death of the father of Cyrus and Theodore, they continued to occupy the farm on which they resided, title thereto being in Cyrus, and that Cyrus managed and controlled the farming operations on the lands of both and looked after all of the business necessary to be done; that shortly after the father's death, Theodore's share of the estate passed into the management of Cyrus; that Theodore lived in the home of Cyrus after the latter's marriage; that Theodore worked upon the farms of himself and brother in the manner usual to a hired hand, Cyrus marketing all crops and receiving all proceeds, that Theodore never developed mentally, and was always under the domination of Cyrus; that he never exercised his own independent judgment about the farm or its operation, but depended on his brother. The evidence showed that the only transaction of business he ever looked after was the sale of produce amounting to about two dollars at a time Cyrus was absent. Witnesses who testified to their acquaintance and means of knowledge stated that Theodore could not learn at school, and that he was feeble-minded. One said he was a half-wit; another said he was an idiot; another said he had no knowledge or understanding of the value of his property. Other witnesses said he was crazy, not of sound mind, and that he had always been so. There was also evi-

dence that he had no bank account and no money except on occasions when Cyrus gave him a small amount to spend, he would go to barber shops and places where he would spend small amounts, returning unspent portions to Cyrus. Theodore told one witness he was working on the farm to get spending money. The above is not intended to be a complete summary of plaintiff's evidence but only a sufficient statement in view of the demurrer lodged against it. On cross-examination some of the witnesses used milder language with reference to Theodore, some said he knew what property he had, etc., but there was sufficient evidence which, if believed, warranted the conclusion that Theodore never developed normally and never had capacity to make a will. There was no error in overruling the demurrer.

The defendant introduced evidence tending to show the mental capacity of Theodore; that he attended to business, knew what he possessed, knew his relatives and their relationship to him. Cyrus Geopfert testified his relations with his brother were always friendly and that he transacted business for him at his request; that in 1911 $4,300 of Theodore's money was turned over to him for which he gave a note; that he paid the note and destroyed it; that he had other moneys to invest for which he gave notes which he afterwards paid. It is significant here, and must have been to the trial court, that although Cyrus testified that he had always accounted to Theodore for his share of crops and for moneys borrowed from Theodore, yet since 1911 he had purchased 200 acres of land for which he paid $13,200, while his reports to the probate court showed that Theodore's lands remained the same as at the date of the father's death, except an undivided one-half interest in 40 acres purchased in 1918 from the heirs of his brother Orlin, and his personal property was worth less than $500, even though it is conceded Theodore had at least $4,300 shortly after the father's death.

The trial court made findings of fact, including the following:

"5. That on the 20th day of April, 1911, the said J. F. Geopfert, father of Theodore and Cyrus Geopfert, died testate, leaving certain money and personal property from which the said Theodore Geopfert and Cyrus Geopfert each received approximately $6,000, in money and personal property.

"6. That at the time of the distribution of the personal property of the said J. F. Geopfert practically all of the portion thereof belonging to the said Theodore Geopfert was by the executors, upon order of Theodore Geopfert, delivered to the defendant, Cyrus Geopfert, and was by the said Cyrus Geopfert placed in his individual account and the same was used, appropriated

and disposed of as the said Cyrus Geopfert saw fit and no accounting or settlement to or with said Theodore Geopfert for said personal property so delivered to him was ever made by the defendant, Cyrus Geopfert.

"7. That after the death of the said J. F. Geopfert, the said Cyrus Geopfert took charge of the above-described real estate belonging to the said Theodore Geopfert and managed and controlled the same, looking after the renting of said real estate, collected all the rents and profits arising therefrom and, in general, managed and controlled all of the business affairs of the said Theodore Geopfert during the remainder of his lifetime.

"8. That no accounting was ever made by the said Cyrus Geopfert to Theodore Geopfert for the rents and profits collected from said real estate or for other business transactions conducted by said Cyrus Geopfert for or on behalf of Theodore Geopfert. That from and after the death of J. F. Geopfert, the said Theodore Geopfert during the remainder of his life made his home with his brother, Cyrus Geopfert, in the dwelling establishment and built by the said J. F. Geopfert and by him deeded to the said Cyrus Geopfert.

"9. That, during the above-mentioned time the said Theodore Geopfert served as a farm hand, performing manual labor, always under the will, direction and orders of his brother, Cyrus Geopfert, receiving such compensation therefor his board, shelter, such ordinary clothing as his circumstances required in his station in life and such sums of money for spending purposes and recreation as the said Cyrus Geopfert provided.

"10. That the said Theodore Geopfert was feeble-minded during the whole of his natural life, his mind not developing, improving or changing with maturity, save and except the acquisition of a few cardinal facts, such as the names of people, animals and objects with whom and with which he came in constant contact. That he never exercised his own will or judgment, possessed no reasoning power, but acted always under the direction and obeyed the will of his brother, Cyrus Geopfert.

"11. That the said Theodore Geopfert was incompetent to attend to business affairs of any nature or kind whatsoever at any time during his life and that he did not transact business at any time, leaving the entire management and control of his business affairs to his brother, Cyrus Geopfert.

"12. That at the time of the execution of the purported last will and testament of the said Theodore Geopfert, to wit, on May 5, 1918, the said Theodore Geopfert was wholly without testamentary capacity, was mentally incompetent to make a will or otherwise dispose of his property, real or personal, wholly unable to grasp and understand the gravity of such a business transaction and did not understand or comprehend what disposition he had made of his property by the execution of said purported will; but understood, believed and carried the impression throughout the remainder of his life that by signing said purported will he had entirely disposed of his property to his brother, Cyrus Geopfert, except that in exchange for said property he was to have a home for the remainder of his life.

"13. That at the time of the execution of said purported will and at all times from and after the death of J. F. Geopfert during the remainder of the life of Theo. Geopfert, the said Cyrus Geopfert was the confidential agent of,

and occupied a position of trust toward the said Theo. Geopfert, having at said time and at all times after his father's death, the possession, management and control of all of the property of the said Theo. Geopfert, real and personal, and at all such times exercised such influence over the said Theo. Geopfert as amounted to an absolute and complete control of his will and was the adviser of the same Theo. Geopfert in all matters, business, social and personal."

Appellants contend that under the decision in *Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494, there was evidence that Theodore Geopfert knew and understood what property he had, knew about his relatives and others who might be the objects of his bounty, and was therefore able to direct and make disposition of his property with understanding and reason. It is conceded there was evidence to this effect. But did it dispose of the evidence to the effect that Theodore Geopfert had always been subnormal, an imbecile dependent on his brother, etc., as indicated above? It has become trite to say the trial court had an opportunity to observe the witnesses on the stand, their demeanor, and their candor or lack of it, which we cannot get from the printed page. Essentially this was a fact case, no difficult questions of law were involved in it, and no reason appears why the judgment of the lower court, finding the issues in favor of the plaintiff, should be set aside.

Two specifications of error with reference to admission of and refusal to admit certain testimony are not argued in the briefs, but we have examined the record and do not discern any reversible error in the court's rulings.

The judgment of the trial court is affirmed.