No. 33,475

AUGUST ANDERSON et al., *Appellants,* v. OSCAR ANDERSON, as Executor of the Last Will and Testament of Esther Anderson, Deceased, et al., *Appellees.*

(76 P. 2d 825)

Opinion filed March 5, 1938.

*Alvin R. Springer* and *Fred R. Smith,* both of Manhattan, for the appellants.

*Scott Pfuetze,* of Manhattan, and *B. C. Pickering,* of Wamego, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to contest a will, and from an adverse judgment plaintiffs appeal.

Esther Anderson, the deceased testatrix, was the youngest of ten children, one of whom had predeceased her. The plaintiffs were her five oldest brothers, and the defendants were her two youngest

brothers and a sister. The father, who died in 1913, owned about 3,000 acres of land in the vicinity of his home place. Whether by will or by division among the children does not appear, but this estate was divided, and at her death Esther owned about 400 acres of land, also personal property consisting of an automobile, a large number of chickens, money in a bank, and other personal property, the value of any specific item not being shown. In addition to her lands individually owned, she had an interest in what was called the Peter Gust farm.

The will of Esther Anderson gave all her property to the younger brothers, Oscar and Elmer, and to the sister Hannah, in equal shares, and appointed Oscar as executor. There was no contention that the will was not executed in manner and form as required by statute. The grounds for contest as alleged in the petition were that at the time of execution of the will Esther was not of sound mind and memory; that she was mentally and physically incapable of making a will; that the will was prepared at the direction of Hannah, one of the beneficiaries, and that Hannah was the confidential agent and adviser of Esther; that Esther did not read and did not know the contents of the will and did not have independent advice with reference to it, and further that all the beneficiaries exercised undue influence on Esther to procure the making of the will.

At the trial there were fifteen witnesses whose testimony tended to support plaintiffs' claims, and about the same number whose testimony was to the contrary.

The trial court made findings of fact, which are summarized and quoted as follows: After reciting the family history, and that after the death of the father in 1913 and the mother in 1922 Esther and her brothers, Oscar and Elmer, continued to occupy the old family homestead as their residence, a statement is made as to the property owned by Esther and—

"4. That during her entire life Esther Anderson was eccentric, timid, backward and of a retiring nature; that she talked but little and was especially timid in the presence of strangers; that she had but very little education, but was able to write her name; that she entrusted most of her business of looking after her farm land to her brother, Oscar, although there is some evidence that she dictated to her brother the terms upon which said land should be rented or leased. That she was hardworking and thrifty and always had a large flock of chickens. That she never had any intimate friends outside of the family and went but little, and then usually in the company of some of her brothers or of her sister."

After stating the will was executed and made disposition of her property, the court further found:

"6. That prior to the execution of said will and testament the said will was drawn by one B. C. Pickering, an attorney at law, and that prior to signing the same said will was discussed in its entirety, and paragraph by paragraph, by the said B. C. Pickering to and in the presence of the said Esther Anderson, and that thereafter said Esther Anderson affixed her signature to said last will and testament by making her mark thereon in the presence of B. C. Pickering and Jack Plummer, the witnesses to said will.

"7. That at the time of the execution of said last will and testament the defendants, Oscar Anderson and Elmer Anderson, were not present, and that the defendant, Hannah Nyquist, was in the house, but in and out of the room of Esther Anderson, and that there is no evidence of undue influence by Elmer Anderson, Oscar Anderson, Hannah Nyquist, or either of them upon the said Esther Anderson.

"8. That at the time of the execution of said last will and testament the said Esther Anderson was confined to her bed suffering with cancer of the uterus and that she had been afflicted with such disease in its various stages since about October, 1934, and at the time of the execution of said will she was in a weakened condition physically.

"9. That at times during her last illness said Esther Anderson suffered severe pain and was near unconsciousness to such extent that she did not recognize her relatives and friends; that at other times during her last illness the said Esther Anderson was perfectly rational and possessed the same mental capacity and reasoning power which she had had throughout her entire life, and the evidence discloses that said last will and testament was executed at a time when the said Esther Anderson was sane and rational.

"11. That at the time of the execution of said last will and testament by Esther Anderson she was of sound mind and mentally competent to make said last will and testament, that she was mentally competent to appreciate and know the property which she owned and to know and understand who her relatives were and that said last will and testament should be upheld and sustained."

The court also found that the will had been duly admitted to probate. It concluded, as a matter of law, that Esther Anderson had mental capacity to make the will and that it should be upheld.

The specifications of error are in effect that the trial court erred because the evidence conclusively proved the various grounds of plaintiff's petition, and that the trial court erred in finding to the contrary, and in overruling plaintiffs' motion for a new trial. As presented in the brief, the argument, at least in large part, is predicated on the proposition the trial court did not have the benefit of a jury, and that the evidence should be carefully scrutinized to determine whether the trial court reached a true and proper conclusion, it being said:

"Therefore, in the case at bar, we ask the court to carefully review the evidence and render its opinion in this case, uninfluenced by the fact that the trial court decided the case in the lower court adversely to the five brothers who have seen fit to attack the will of the maiden sister."

What we are here asked to do cannot be done.

Contest of a will was under consideration in *Evans v. Evans*, 109 Kan. 608, 612, 201 Pac. 60, and it was there said:

"It is said the findings of fact were not sustained by sufficient evidence. The evidence was conflicting, the credibility of testimony was involved, and this court is precluded, by well-understood rules, from disturbing the findings." (p. 612.)

Another action to contest a will was considered in *Geopfert v. Geopfert*, 141 Kan. 454, 41 P. 2d 741, and it was there held:

"In an action as above outlined, where defendant's evidence controverted plaintiff's evidence, a question of fact was presented for the determination of the trial court, and that finding is conclusive on appeal." (Syl. ¶ 2.)

And many other decisions of like effect might be cited.

The function of the appellate court is to determine whether or not there is evidence which supports the findings of the trial court. It would extend this opinion to undue length to set out in detail specific statements of witnesses, but there was ample evidence to show that while the testatrix had always been rather timid and diffident in meeting strangers, and had never mixed much in the activities of the community, she did look after her own affairs rather successfully.

In an action to contest a will, the burden is on the proponents of the will to make a prima facie showing of capacity to make a will. Here the execution of the will and its admission to probate is alleged in the petition, and that made a prima facie case. The test of mental capacity to make a will is that the testator know the property he has, know those persons who are the natural objects of his bounty, and be able to make a reasonable and understandable disposition of such property. (See *Klose v. Collins*, 137 Kan. 321, 20 P. 2d 494, and cases cited.) Where it is admitted or the proof shows the will was duly admitted to probate, and an effort is made to contest it on the ground its terms were procured by undue influence, the burden of proof is upon the contestors. And to be sufficient to destroy the will, the proof must show that the claimed undue influence amounts to coercion, compulsion and restraint which destroys the testator's free agency, and by overcoming his power of resistance obliges or causes him to adopt the will of another rather than ex-

ercise his own. (See *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634, and cases cited.)

Owing to objections made by appellants, there is no specific testimony leading up to the drafting of the will by the attorney who attended to it, but he testified that he prepared the will and went to the Anderson home, where he asked the testatrix if she had directed him to prepare a will and she stated she had. He then went over the will, item by item, with her, and she stated that it was the way she wanted it; that she understood it and that she wanted no changes made in it as drawn. Thereafter she executed it. On cross-examination he stated that she was intelligent and knew what she was doing, and that after the will was drawn she directed that a check be drawn upon her bank to pay him. Other witnesses testified to their acquaintance with the testatrix and their opportunities to form an opinion as to her mental capacity and that she was of sound mind. No purpose can be served in detailing that evidence nor evidence to the contrary.

Insofar as exercise of undue influence is concerned, there is no direct evidence. Such contention as is made with respect thereto is coupled with the claim that appellees were the confidential advisers of the testatrix, a phase of the matter which will be mentioned later. The evidence disclosed that neither Esther, the testatrix, nor her brothers, Elmer and Oscar, had ever married, and that Esther, the youngest, was 44 years old at the time of her death, and that they constituted a remnant of the original family of their father and mother and lived on the old home place, and that Hannah, although married, spent a great deal of time at the home place. It would not be surprising that Esther would feel closer to her two brothers at the home and her only living sister than she would to the older brothers, all of whom had long since left and established homes of their own. The fact Elmer, Oscar, and Hannah might be in position to unduly influence Esther does not establish the fact they did so. It was said in *Klose v. Collins*, supra, that:

"Natural human desire, motive and opportunity to exercise undue influence, will not alone authorize the inference that it was in fact exercised, nor will suspicion or possibility of parties having induced the making of a will favorable to them as beneficiaries be enough to justify a finding of undue influence." (Syl. ¶ 4.)

And in *Ginter v. Ginter*, supra, the syllabus states:

"When a contested will appears to have been duly executed and attested according to the statute of wills the law presumes it to be valid. This presump-

tion must be overcome by proof, and the burden of proof rests upon whoever alleges it to be the product of undue influence or fraud.

"In all such cases the proof must be substantial, so that the judges of fact, having a proper understanding of what undue influence is, may perceive by whom and in what manner it has been exercised, and what effect it has had upon the will." (Syl. ¶¶ 3, 4.)

Measured by the standards established by the above cases, the proof here falls far short of showing that either of the three beneficiaries under Esther's will exercised any undue influence on her to procure her to make a will in their favor.

It is contended, however, that the beneficiaries under the will were confidential agents and advisers of the testatrix and that she did not have independent advice concerning her will. It may here be noted that in the petition such a charge was leveled only at Hannah. There is little evidence to warrant any conclusion that either of the two brothers or the sister were confidential advisers of the testatrix, and there is evidence to warrant a conclusion they were not. There is no evidence that Oscar or Hannah had anything whatever to do with the preparation of the will. While not entirely clear, it seems that Esther sent Elmer to her attorney with instructions as to how she wanted the will drawn. There is no evidence that Elmer did anything except to see the attorney and deliver the instructions. Thereafter the attorney prepared the will and personally took it to the home of the testatrix, where he went over it with her as detailed above. During the attorney's conversation with Esther, neither of the two brothers nor the sister were present. There is no ground for holding the will invalid by reason of G. S. 1935, 22-214.

No error has been made to appear, and the judgment of the trial court is affirmed.