No. 35,006

CAMERON ARTLEY KUNKLE, *Appellee* and *Cross-appellant,* v. GROVER C. URBANSKY et al., *Appellants.*

(109 P. 2d 71)

Opinion filed January 25, 1941.

*D. M. Sparks,* of St. Marys, and *J. H. Jenson,* of Oakley, for the appellants.

*A. C. Wilson,* of Oskaloosa, for the appellee.

The opinion of the court was delivered by

HOCH, J.: Plaintiff prevailed in an action to set aside a will on the ground of mental incompetency of the testatrix. Defendants appeal. There is also a cross-appeal by the plaintiff from the order refusing to direct the probating of a prior will. The primary question

presented is whether the finding of the trial court that the testatrix was incompetent to dispose of her property is supported by substantial, competent evidence.

Brief narration of the facts will suffice. Alice M. Urbansky, testatrix of the contested will, died at her home in Perry, Jefferson county, on May 12, 1938. She had been under the care of a doctor for five or six months, suffering with a malignancy which caused her death. On May 16, 1938, the will executed on April 14, 1938, was admitted to probate. Under its terms her property was left in five equal parts to four brothers-in-law, the Urbanskys, residents of St. Marys, Kan., and to a nephew, Leo Sample, of Chicago. The instant action to set aside the will was commenced on March 20, 1939. The plaintiff, Cameron Kunkle, was a son of the testatrix, by a former and early marriage; he was Mrs. Urbansky's only child. He had gone away many years before and she had not heard from him for twenty or twenty-five years until a short time before her death, when he returned. In the will she made a specific reference to him, saying that she was not unmindful of him and that it was her intention not to make provisions for him, "for reasons which he will understand."

The petition to set aside the will alleged that the testatrix, on account of the "pain, suffering, decay and disintegration occasioned by said disease" from which she was suffering was "weak, feeble, without resistance, physically and mentally" at the time the will was executed, and was "wholly incompetent to dispose of her property." It was further alleged that the defendants—beneficiaries under the will—willfully and with intent to defraud and "to deprive those naturally and lawfully entitled to her bounty of such property," caused the will to be prepared and to be presented to her, without giving her an opportunity to secure independent advice or have the contents of the instrument explained to her by legal counsel, and that they procured her signature by fraud and undue influence. It was further alleged in the petition that Mrs. Urbansky had executed a will in 1930 and a codicil thereto in 1931 leaving a life estate in her property to a brother, with remainders to her son, her grandchildren, and her nephew, and that as a result of the death of the brother prior to the death of the testatrix, the named beneficiaries became owners in fee simple as tenants in common of all her property.

The answer, after making general denial, alleged that the will had been drawn by Mr. Mitchener, of St. Marys, at her request and

direction; that after the death of her husband, Ben Urbansky, which occurred July 14, 1926, the defendants, Urbansky brothers, had advanced to her many thousands of dollars and that she had often expressed a desire to repay them; that on February 28, 1938, she had made a will leaving all her property to her nephew but that later, for reasons recited in the answer, she had revoked the will of February 28 by the execution of the will of April 14.

No direct evidence in support of the allegations of fraud and undue influence made in the petition was introduced. An attorney who had transacted business for her in prior years, and who had been named as executor in the will made in 1930, testified that after the death of her husband she was bitter toward the Urbansky brothers in connection with certain business deals and had threatened to bring action against them but had never done so, and that she frequently said in those years that she did not want them to get any of her property. The last time he saw her was in the summer or fall of 1937. One or two other witnesses gave somewhat similar testimony. There was also testimony that some of the Urbanskys had visited and talked with Mrs. Urbansky a number of times during her illness and before the will was executed—one witness, at least, testifying that Mrs. Urbansky had asked to have them come—but there was no evidence that they prepared the will nor that any of them was present when the will was signed. The evidence was that the will was brought by Mr. Mitchener of St. Marys.

The court made a number of specific findings of fact. It is not necessary to note those which are simply narrative in character. It did not find that there was any fraud or undue influence exercised, or that any of the beneficiaries had anything to do with preparing the will or securing the signature of the testatrix. The court found that the prior wills of 1930, 1931, and February, 1938, hereinbefore referred to, as well as the will at issue, had been signed and executed by the testatrix, and that—

"11. Alice M. Urbansky was, during her lifetime, a very strong willed woman; that she was, during most of the time unfriendly to her four brothers-in-law, named as devisees in her last will and testament. That she at one time, after the death of her husband, insisted on bringing suit against them for an accounting on certain property owned jointly and located in Oklahoma; that she on several different occasions stated she was displeased with her brothers-in-law.

"12. That Alice M. Urbansky became ill in the fall of 1937, and was continually under a doctor's care from December, 1937, until the date of her death; that Mrs. Urbansky suffered from cancer of the intestines, from which

she died on the 12 day of May, 1938; that the attending physician was one Dr. W. O. Nelson, of Lawrence, Kansas, and who was a second cousin of deceased.

"13. That Mrs. Urbansky was given codeine daily, beginning January 12, 1938, until her death; that from January 12, 1938, to April 3, 1938, she was given ¼ grain at a dose and thereafter until shortly before her death ½ grain at a dose.

"14. That Mrs. Urbansky grew gradually weaker until her death; that old friends and acquaintances were refused admittance to her room because of her serious illness; and that on April 10th, her granddaughter was refused admittance because deceased was too weak to have company. That during her last illness, J. B. Wilson, her attorney, who had handled some of her legal business for her, called to see her but was refused admittance for the reason that she was too ill.

"15. The evidence does not disclose that Mrs. Urbansky had any independent advice as to the legal effect of either the will of February 28, 1938, or the will of April 14, 1938."

The court then entered three conclusions of law as follows:

"1. That the said Alice M. Urbansky did not have sufficient mental capacity to make a will, disposing of all of her property, on the 14th day of April, 1938.

"2. That the will of Alice M. Urbansky, made on the 14th day of April, 1938, and admitted to probate on the 16th day of May, 1938, in the Probate Court of Jefferson county, Kansas, should be set aside and held for naught; that the plaintiff should recover his costs herein.

"3. That the property of the said Alice M. Urbansky should descend as though the said Alice M. Urbansky had died intestate."

Upon the motion of the plaintiff, conclusion of law number one was changed to a finding of fact.

It will be noted that the court made no finding of fact indicating the mental condition of the testatrix other than the finding that she did not have sufficient mental capacity to make a will. Appellants urge that this is a conclusion and not a finding of fact. But whatever it may be called, the record has been carefully examined to see what evidence supports it.

Certainly the fact—as found by the court—that the testatrix had on several occasions stated that she was displeased with her brothers-in-law is not a finding which in itself can justify the setting aside of a 'will in which they are made beneficiaries. The same must be said for the finding that at one time several years prior thereto she had contemplated a suit against them for an accounting of property owned jointly, which suit never was brought. In making this observation we are considering only the plaintiff's evidence and

disregarding defendants' evidence which tends to create a different impression concerning her attitude toward the Urbanskys.

What then is plaintiff's evidence which is said to support the finding of mental incompetency? We do not find positive testimony by any witness to the effect that she was not in possession of her mental faculties, with understanding of what she was doing. Doctor Nelson, who attended her during the months of her illness, and who was a witness for the plaintiff, was asked: "At that time, in your opinion was she mentally able to dispose of her property?" To which he answered: "I don't think I want to say yes or no to that question. There might have been times she was not; *the times I saw her I would think she was able to do business.* She took codeine . . . and she might be out from under the influence of it and an hour after taking it she might be the other way." He further testified that she was quite alert, her mind was quite good considering the condition she was in, she was in full possession of her mental faculties and knew what she was doing at all times up to the last week of her life, that it might be debatable as to her being able to transact business to some extent, that she might have been in a sort of a coma the last few hours of her life. The only other witness for the plaintiff who testified as to her mental condition was Sturm, a real estate man, who testified that in December, 1937—several months before the will was executed—he had a conversation with her at the bus station in Perry about her property, and that he tried to find out what she wanted for her property but was unable to do so, that she would not stay on the subject but was "flighty" that particular day; and not as alert as she had been at other times. He said, however, that he "would not say that she was of unsound mind." Certainly none of this is sufficient to support a finding that in April, 1938, the testatrix was not mentally competent to make a will. On the other hand, Helen Irvin, who stayed with Mrs. Urbansky from December 1, 1937, until her death testified that she did her own writing, wrote to her nephew right along, wrote out her grocery orders, and appeared to be of sound mind at the time the will was executed. Stella Delk, the second witness to the will, testified that Mrs. Urbansky "was very alert, her mind was bright and clear."

Appellee stresses the fact that for some weeks prior to the death of the testatrix a number of relatives or friends were not admitted to see her when they called at the home. There is nothing unusual

about that. Moreover, Doctor Nelson, plaintiff's witness, testified that as her physician he had suggested to the nurse, probably a month or two before Mrs. Urbansky's death, that the company be limited because she was in a good deal of pain and he thought company might disturb her.

Appellee also contends that the fact that the testatrix was given codeine in increasing doses to relieve pain and that the continued use of such a drug affects the brain and nervous system is evidence supporting the finding of incompetency. She had been given doses of one-fourth grain, which was increased to one-half grain April 18— several days after the date of the will. The doctor who gave the prescriptions and who attended her did not testify that the use of the drug had affected her mental powers.

Physical weakness, suffering, the fact of approaching death, are not in themselves sufficient to invalidate a will. It is sufficient if in spite of them the testator has sufficient mental capacity to know and understand the nature and extent of his property, has an intelligent understanding as to the disposition he desires to make of it, the persons he desires to receive it, and has the capacity to comprehend the nature of the claims to his bounty of those whom he desires to exclude from participation. It is not necessary that the testator have sufficient capacity to enter into complex contracts or to engage in intricate business transactions. (Page on Wills, 2d ed., §§ 137, 140, 163, and cases there cited; 68 C. J. 481, § 89; 485, § 93; *Hudson v. Hughan,* 56 Kan. 152, 42 Pac. 701; *Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494; *Barnhill v. Miller,* 114 Kan. 73, 75, 217 Pac. 274; *Higbee v. Bloom,* 108 Kan. 723, 733, 196 Pac. 1080; *Cole v. Drum,* 109 Kan. 148, 197 Pac. 1105.)

We find no substantial evidence to support a finding that the testatrix did not have the requisite mental capacity to make a will. This conclusion makes it unnecessary to consider contentions made in the cross-appeal.

The judgment must be reversed. It is so ordered.