No. 36,481

In the Matter of the Estate of Samuel Crump, Deceased (GEORGE CRUMP et al. and BENNIE E. SANDERS, etc., *Appellees*, v. SALLIE CRUMP, *Appellant*.)

(166 P. 2d 684)

Opinion filed March 9, 1946.

*William Keith,* of Wichita, argued the cause for the appellant.

*John B. Bryant,* of Wichita, argued the cause and *B. Mack Bryant* and *George L. Adams,* both of Wichita, were on the the briefs for the appellees.

The opinion of the court was delivered by

HOCH, J.: This appeal presents for review two cases which were consolidated in the court below. Both were originally brought in the probate court. One was an action to annul a marriage and the other was for probate of a will. From judgments of the district court annulling the marriage and refusing to direct the pro-

bating of the will—both on grounds of mental incompetency—interested parties bring this appeal.

Samuel Crump and Sallie Williams, both residents of Wichita, Kan., were united in marriage on July 15, 1941. On July 27, 1941, while Samuel Crump was a patient in a hospital at Halstead, Kan., he executed what purported to be his last will and testament in which he bequeathed one dollar to each of three sons by a former marriage, and left the remainder of his property, real and personal, to his wife, Sallie Crump. On February 11, 1942, Crump was adjudged insane and Bennie Sanders was appointed as his guardian in the probate court. On September 22, 1943, Sanders, as guardian, filed a petition in the probate court to annul the marriage on the ground that at the time the alleged marriage was contracted Crump was "physically and mentally incapable of entering into a marriage contract, or any other contract or agreement," and that Sallie Williams knew at the time that he was incompetent to enter into a marriage contract and that she "procured said marriage ceremony to be entered into for the purpose of procuring whatever property" he might possess.

On November 26, 1943, Crump died, and on December 28, 1943, Sallie Crump filed for probate the will to which reference has been made. To this petition George and Claude Crump, sons of the decedent, filed answers alleging that their father was mentally incompetent at the time the alleged will was executed. On February 10, 1944, the probate court held that the testator was incompetent at the time the instrument was executed and refused to admit it to probate. On the same day he appointed Sanders as administrator of Crump's estate. On February 24, 1944, the action to annul the marriage was revived in the probate court in the name of Sanders as administrator, and on March 23 the marriage was annulled.

On April 17, 1944, Sallie Crump took an appeal to the district court from the order annulling the marriage. For some reason which the record here does not disclose there was a long delay in transmitting the appeal to the district court and on October 26, 1944, Sallie Crump filed a motion in the probate court to set aside the order annulling the marriage on the ground that the probate court had no jurisdiction of the subject matter. The motion to vacate was overruled and appeal from that order as well as from the order annulling the marriage was transmitted to the district

court on January 27, 1945. For the reason that the two appeals relating to the annulment of the marriage involved the same question the trial court announced that it would hold in abeyance the appeal from the order to vacate and would hear only the appeal from the order annulling the marriage, and the appeal from the order refusing to admit the will to probate. The cases will here be referred to as the will case and the marriage annulment case.

The question presented by the will case was whether Samuel Crump was mentally competent to make a will on July 27, 1941. The question in the marriage annulment case was whether he was mentally competent to enter into a contract of marriage on July 15, 1941. The record as shown by the abstract brought here is somewhat confusing but it appears that Sallie Crump objected to hearing the will case and the marriage annulment case together and that she filed a motion to dismiss the marriage annulment case on the grounds that the probate court had no jurisdiction to entertain the action, that Sanders, as guardian of Samuel Crump, had no capacity to bring the action and that if he did have such capacity the action did not survive and could not be revived in the name of the administrator and that no cause of action was stated. The trial court overruled the motion to dismiss and a jury was empanelled to try the will case and the trial proceeded. The testimony received related to Samuel Crump's mental competency over a considerable period beginning prior to the marriage on July 15 and extending beyond July 27 on which day the purported will was executed. The jury was unable to agree and was discharged. Thereafter and upon May 23, 1945, motions were made by the adversaries of Sallie Crump, in the two cases, to consolidate the two cases and for judgment in both cases on the pleadings and on the evidence taken in the will case. Sallie Crump resisted these motions and demanded separate trials in the two cases and that both actions be dismissed for want of jurisdiction. The trial court refused trial by jury, consolidated the two cases and held that upon the evidence Samuel Crump was incompetent to enter into a marriage contract on July 15, 1941, or to execute a will on July 27, 1941. Orders were thereupon entered declaring the marriage void and refusing to admit the purported will to probate. This appeal followed.

We first consider the will case. The trial court did not err in holding that the petitioner was not entitled to a jury trial as a matter of right. G. S. 1943 Supp. 59-2408 provides, in part:

"All appeals other than those from the allowance or disallowance of a demand, adjudging or refusing to adjudge a person incompetent, and committing or refusing to commit a person to a state hospital, shall be tried by the court without a jury, but the court may call a jury in an advisory capacity or in a proper case may refer the matter or part thereof to a referee."

G. S. 1935, 60-2903, provides:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived or a reference be ordered as hereinafter provided. All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury or referred as provided in this code."

Absolute soundness of mind is not the real test of testamentary capacity (*Kunkle v. Urbansky*, 153 Kan. 117, 109 P. 2d 71, and cases cited p. 122) and we have uniformly held that on appeal to the district court from an order admitting or refusing to admit a will to probate or to set aside a will trial by jury is not a matter of right. (*Bell v. Skinner*, 119 Kan. 286, 290, 239 Pac. 965; *Gallon v. Haas*, 67 Kan. 225, 72 Pac. 770; *Hudson v. Hughan*, 56 Kan. 152, 161, 42 Pac. 701; *Rich v. Bowker*, 25 Kan. 7, 9.)

Appellant contends that there was no evidence to support a finding that Samuel Crump was not mentally competent to execute a will on July 27, 1941. Doctor Gardner, who had practiced medicine for fifty years and who attended Crump while he was in the hospital in Wichita in July, 1941, testified in part:

"He had a 4 plus Wasserman, it might have been higher than that— which would indicate that he had syphilis to a degree of 4 plus and he had a paranoid condition in which the patient imagines a great many things such as being extremely wealthy and having authority and a right to dictate.

"Syphilis to the extent of 4-F affects the entire human body and in many cases the brain more than other structures of the body and it produces what is called softening of the brain. Samuel Crump when I saw him July 16, 1941, was not then or for any appreciable time prior thereto of sufficient mental capacity to enter into any kind of a contract. I would say that the same condition existed on July 15th, 1941. There is no cure for a 4 plus Wasserman. These conditions develop into what we call a soft tumor of the brain. There would not be any improvement in this patient 10 days later in so far as his having mental capacity to execute a will. . . .

"Q. How often did you see him at the hospital? A. I saw him almost every day, only a time or two I didn't see him.

"Q. And this description that you gave, you give from your knowledge as a physician and from your memory of all these things you have described. A. I don't exactly understand what you mean.

"Q. I want you to tell me what Samuel Crump did at the hospital to exhibit any of those symptoms that you talked about, in plain English.

A. As I say, he had this 4 plus Wasserman and I treated him on the basis of a syphilitic condition.

"Q. What did he say or do to indicate that condition? A. He could not say or do anything because he didn't know."

Doctor Geeder, who had practiced medicine in Wichita for more than twenty years, testified as to Crump's actions and conduct in April or May prior to the execution of the instrument and apparently at certain times after that. The following statements are from his testimony:

"Q. What was your opinion as to his mental condition? A. He was decidedly off, he was mentally insufficient and had been that way for some time. . . . I have heard him say that he owned half of Wichita, property all over Wichita, and that he was worth thousands of dollars."

Doctor Bell, a practicing physician at Wichita for many years and a member of the commission which inquired into Crump's mental condition six or seven months after the purported will was executed—resulting in a finding of mental incompetency and the appointment of a guardian—testified:

"Q. In your opinion, was it a condition which would come on over night, or was it a gradual condition which terminated in this? A. It probably came on gradually."

While the testimony of Doctor Geeder and Doctor Bell might not be sufficient, standing alone, since they did not examine him on July 27, 1941, it was competent as throwing light on his condition over a period of months, when considered in connection with other testimony bearing directly upon Crump's condition on July 27.

Claude Crump, a son, testified that he left to join the Navy in March, 1941, and at that time his father's "condition was very, very poor, and even though he is my father, I would say he was crazy."

Annie Weaver, a sister-in-law of Crump, testified at some length as to his condition and particularly when she visited him at the hospital in Halstead where the purported will was executed. After reciting at some length his unnatural actions she testified:

"It is kinda disgraceful and it is very bad to speak about, the condition he was in; it was just terrible the way he acted. He was unsound, he was insane."

Bennie Sanders, Crump's guardian and later administrator of his estate testified that he saw him in the early part of July, 1941, and again early in August, 1941, in the hospital at Halstead. His narration of Crump's actions early in July need not be repeated here but it clearly indicated mental incompetency at that time. As to the visit at the Halstead hospital he testified:

"I saw him in the hospital at Halstead early in August, 1941. They had him in a basement room locked up. His mental condition was then such that you could not carry on a conversation with him."

It is unnecessary to relate the testimony further on this point. While there was conflict of testimony on the issue it was a question of fact to be determined by the trier of the facts. We cannot weigh the conflicting evidence. There was substantial evidence to support the finding and it will not be disturbed.

Appellant makes some complaint relative to instructions to the jury but inasmuch as trial by jury was not required and that the jury was discharged and the case was tried to the court, we need not examine the instructions. In view of the conclusion presently to be stated with reference to the annulment case it is also unnecessary to consider appellant's contention that the two cases were improperly consolidated, or other contentions made by appellant in the will case. It follows that the judgment of the trial court refusing to admit the will to probate should be affirmed.

In the marriage annulment case we are met at the outset with a question of jurisdiction. Did the probate court have jurisdiction to entertain the action to annul the marriage, and if it did not have jurisdiction did the district court acquire such jurisdiction upon appeal?

It may first be noted that although an administrator of Crump's estate had been named in the probate court the administration had not proceeded to final settlement, no distribution had been made and there was no finding as to who the lawful heirs or distributees were. The instant action brought in the probate court was simply a marriage annulment action. The order of the probate court was one of annulment and nothing more. We need not, therefore, here consider whether upon a proceeding to determine the heirs the probate court would have had power—in the absence of annulment of the marriage by the district court—to make a finding that Sallie Crump was not a lawful heir for the reason that the marriage was void.

Article 2, section 18 of the constitution of Kansas provides: *"All power to grant divorces,* is vested in the *district courts,* subject to regulation by law."* (Italics supplied.)

It is of course true that annulment of a marriage is at once distinguishable from a divorce. The former is the setting aside of a purported marriage, which because of mental incompetency or other reason sufficient in law, was void at its inception. Divorce is the

160

judicial dissolution of a marriage relationship even though it may have been lawfully established. Both, however, are the same in that the decree in each case effects dissolution of the marriage status, however viewed.

The power to annul a marriage is expressly conferred upon *district courts* by statute. (G. S. 1935, 60-1515.) And we have also held that district courts have such power under their general equity powers. (*Powell v. Powell,* 18 Kan. 371, 381; *Fuller v. Fuller,* 33 Kan. 582, 7 Pac. 241; *Browning v. Browning,* 89 Kan. 98, 102, 130 Pac. 852; *Westerman v. Westerman,* 121 Kan. 501, 503, 247 Pac. 863.)

The original jurisdiction and powers of probate courts are defined in G. S. 1943 Supp. 59-301 and 59-302. Nowhere in such enumeration of powers or in any other statutes is to be found the power to annul marriages. Although probate courts have enlarged equity powers under the present probate code such equitable jurisdiction is only that which "may be necessary and proper fully to hear and determine any matter *properly before such courts.*" (G. S. 1943 Supp. 59-301 [12]. Italics supplied.) It is clear that the probate court has no jurisdiction to entertain an independent action to annul a marriage and that the instant action should have been dismissed in the probate court.

We come to the next question. Did the district court have jurisdiction to entertain the action upon appeal, even though the annulment order of the probate court was void for want of jurisdiction?

In the absence of statutory provision otherwise, the district court, under the general rule, unquestionably could not acquire jurisdiction of the subject matter upon appeal if the probate court had none. The rule is stated thus in 2 Am. Jur. 851, § 11:

"It is a well-settled rule that where the lower court has acquired no jurisdiction of the subject-matter of an action, an appeal cannot confer any jurisdiction on the appellate court, notwithstanding the trial therein is *de novo* and the court would have original jurisdiction of the matter in controversy."

(See, also, 4 C. J. S. 117.)

This court has consistently followed the general rule, applying it in many cases appealed to the district court from justices of the peace. (*McCracken v. Wright,* 159 Kan. 615, 618, 157 P. 2d 814 and cases there cited.) The rule has also been applied to appeals from probate courts (*Ross v. Woollard,* 75 Kan. 383, 89 Pac. 680).

It is contended, however, that the rule of jurisdiction above stated

is no longer applicable to appeals from probate to district courts, in view of specific provisions of the probate code, effective July 1, 1939. The provisions in question are G. S. 1943 Supp. 59-2402, and 59-2408 as amended by the Laws of 1945. Section 59-2402 reads as follows:

"In any proceeding pending in the probate court when it appears that a decision upon any question of which the probate court does not have jurisdiction is necessary to a full determination of the proceeding, such question shall be certified by the probate court to the district court, having appellate jurisdiction thereof, which court shall proceed to hear and determine the same as though an action involving that question had been filed originally therein. The decision of the district court, when final, shall be certified to the probate court in like manner as a decision upon appeal."

No contention is here made that the procedure prescribed in that section was followed, and it need not be discussed at any length. Suffice it to say that if the validity of the marriage of Samuel and Sallie Crump had been attacked in the probate court in connection with determination of rights of descent and distribution it would appear that 59-2402 might properly have been invoked.

The pertinent portion of section 59-2408 reads as follows:

"Upon the filing of the transcript the district court, without unnecessary delay, shall proceed to hear and determine the appeal, and in doing so shall have and exercise the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court *and as though such court would have had original jurisdiction of the matter.*" (Italics supplied.)

Does this provision mean that any sort of an action may be commenced in the probate court—even though that court does not have the slightest color of jurisdiction of the subject matter—and if the probate court entertains the action and enters judgment or other final order, the district court, upon appeal, has jurisdiction to consider the appeal on its merits? We do not think such a broad construction is warranted.

In the first place, it is clear that the section deals primarily with appeals in cases in which the district court *does not have original jurisdiction.* It will be noted that the words of the statute indicated by italics are: "as though such court would have had original jurisdiction of the matter." Obviously those words would have no application to cases—such as the instant one—where the district court *does have original jurisdiction.* In the instant case original jurisdiction is exclusive in the district court. It is true that the section

also provides that the district court, upon appeal, shall not only have the same power and jurisdiction as if it had had *original* jurisdiction but also "the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court." This clause would specifically cover any cases where under present or future enactments the action might be commenced in either court. Moreover, the whole general purpose of the section seems clear—to give to district courts upon appeal from probate courts, in cases where the latter courts have original jurisdiction either exclusive or concurrent, full and complete power to try the case *de novo*, on its merits. The right to file new pleadings may not be abridged or restricted in the district court, "nor shall the trial in, or the issues to be considered by, the district court be abridged or restricted by any failure to appear or by the evidence introduced, or the absence or insufficiency thereof, in the probate court" (G. S. 1943 Supp. 59-2408 as amended by Laws 1945, ch. 237, sec. 5). These provisions give wide and important significance to section 59-2408 in its entirety. Any action in which the probate court had jurisdiction may now be tried *de novo*, upon appeal, in the district court without limitation, as fully as though the action had been there begun.

A construction of the appeal statute which would disregard all limitations upon the jurisdiction of the probate court would mean that an action to foreclose a mortgage, an action to quiet title to real estate or any other action either in contract or in tort over which the probate court had no jurisdiction whatever might be commenced in the probate court, and if the action is there entertained, it could be taken, by the appeal route, to the district court. Indeed, if such procedure be permitted no reason appears why it would not be equally available in all sorts of criminal as well as civil actions. Such a construction would also result in fruitless duplication of trial in countless cases, would encourage careless practice by attorneys, would promote rather than prevent multiplicity of suits and would raise serious questions as to adequacy of service upon parties and as to other matters.

We conclude that an action to annul the marriage could only be instituted in the district court and that jurisdiction was not acquired by the district court upon appeal. This conclusion makes it unnecessary to determine appellant's contention that the annulment action did not survive and was not subject to revivor in the name of the

administrator. We simply call attention to *Fourth National Bank v. Diver,* 131 Kan. 113, 289 Pac. 446, in which revivor was permitted.

The judgment of the trial court refusing to admit the will to probate is affirmed.

The judgment of the trial court annulling the marriage is reversed and the cause is remanded with directions to vacate the order annulling the marriage and to direct the dismissal of the action in the probate court.

HARVEY, C. J., dissents from syllabus paragraph 4 and from the corresponding part of the opinion, but concurs in the remainder of the syllabus and the opinion.