No. 37,131

In re Estate of J. W. Hall (also known as Joseph W. Hall, deceased). (THE BOARD OF TRUSTEES OF PARK COLLEGE and COLLEGE OF EMPORIA, *Appellants,* v. ELBERT R. HALL and ARDEN L. HALL, *Appellees.*)

(195 P. 2d 612)

Opinion filed July 10, 1948.

*Frank E. Tyler,* of Kansas City, Mo., argued the cause, and *LeRoy W. Raynolds,* of Emporia, *Raymond Eggleston, O. M. Wheat,* both of Medicine Lodge, and *Ilus W. Davis,* of Kansas City, Mo., were with him on the briefs for the appellants.

*Paul R. Wunsch,* of Kingman, argued the cause, and *Max D. Hall, Martin S. Hall,* both of Harper, and *Charles H. Stewart,* of Kingman, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This case involves the probate of a will.

Two wills of J. W. Hall were presented for probate at the same time. The first will executed in 1920 devised a life estate in all of the testator's real estate to his wife and the remainder to ". . . the Presbyterian College, known as the Emporia College, at Emporia, Kan., and to the Park College, of Parkville, Mo. . . ." share and share alike. J. W. Hall's wife consented in writing to that will. Mrs. Hall died in August, 1943, while in the same hos-

pital with her husband. The testator's second will was executed December 8, 1943. By it he revoked all former wills and devised all the property he owned, including his ranch in Barber county, Kansas, consisting of approximately 720 acres, to his nephews, Elbert R. Hall and Arden Hall.

The probate court admitted the last will to probate. The two colleges named as beneficiaries under the first will appealed to the district court which sustained the judgment of the probate court. From the latter judgment the colleges appeal.

Appellants contend first, the testator lacked testamentary capacity to make the last will and, second, that it was the result of undue influence. The trial court prepared a rather lengthy memorandum opinion. In it the court analyzed appellants' contentions. It recognized the conflict in the testimony and, in part, said:

"It is my opinion that the preponderance of the evidence in this case shows that Mr. Hall was competent to make this will."

The trial court expressly recognized that the testator and his wife had for many years contemplated appellants would receive the property involved after Mrs. Hall's death and, in substance, stated: The testator was sixty-nine years of age when the first will was executed; Mrs. Hall had a very strong influence and much control over her husband; after his wife's death the testator probably felt his newly acquired freedom similar to that of a colt "when the halter is taken off"; the Halls had no children of their own but Mr. Hall had the two nephews mentioned in his last will; they were his closest kin (the evidence showed he often referred to them as "the boys" and that when he did so friends knew he was referring to those nephews); there were five grandnephews and grandnieces, the surviving children of three predeceased nieces; two nephews and all nieces had predeceased the testator; notwithstanding the testator was ninety-two years of age when he executed the last will he knew he owned the ranch; he clearly knew he had these two nephews; when he was alone in the hospital after his wife's death these nephews and their families visited him frequently; the nephews might have encouraged him to will his property to them but there was no evidence of anything having been said or done by them, or by members of their families, beyond the bounds of propriety.

The court found the preponderance of the evidence showed the making of this particular will was not a complicated matter, the

testator knew what property he owned, that he wanted his two nephews to have it and on the day he executed the last will he was competent to make it.

In making the foregoing analysis the court recognized the fact the testator had on occasions been somewhat flighty. The trial court reviewed the testimony of two doctors who expressed their opinion the testator was incompetent to make the will. The court stated it believed the doctors were sincere in their testimony but that the court did not agree their testimony showed the testator, on the date of the last will, did not know what property he owned or to whom he desired to leave it.

The trial court stated the evidence was sufficient to show the testator's competency even though the testimony of the scrivener, testator's attorney, was disregarded. On the basis of that statement appellants ask us to disregard the scrivener's testimony in reaching our conclusion. Whether that statement of the trial court was correct or not we have no right to, and shall not, disregard the scrivener's testimony. It is a part of the record and strongly supports the conclusion the testator, on the date he made the will, knew what property he had, to whom he desired to leave it and possessed all his mental faculties.

Appellants emphasize certain facts concerning the prior illness of the testator, as follows:

In March, 1942, Mr. Hall was taken to the Achenbach Memorial Hospital in Hardtner, Kan., in an unconscious condition, which the doctors diagnosed as having been caused by a cerebral hemorrhage and that he was also afflicted with general senility; in January, 1944, C. C. Benefiel, an elder in and the treasurer of the local Presbyterian church at Medicine Lodge filed a petition in the probate court of Barber county for the appointment of a guardian of Hall's person and estate; the commissioners, two doctors, found Hall was mentally incompetent to transact business as a result of senile sclerosis; that for a period of approximately two years prior to the hearing and since Hall had been in the hospital he had been without lucid intervals; the commissioners' report of February 2, 1944, was approved by the probate court and C. C. Benefiel, the petitioner, was appointed guardian of Hall's person and estate.

Appellants argue a finding of *insanity* is conclusive with respect to the date on which it is made and is prima facie evidence of insanity during the prior period covered by the finding. We have so

held. (*Fuller v. Williams,* 125 Kan. 154, 264 Pac. 77.) See, also, the rule on presumption after adjudication of insanity, and discharge from hospital for the insane. (*In re Estate of Strohmeier,* 164 Kan. 675, 192 P. 2d 181.)

We adhere to the rule just stated with respect to an adjudication of insanity. Here there was no finding of insanity but only a finding the testator for approximately two years prior to the hearing for appointment of a guardian on February 2, 1944, was "incompetent to transact business." Manifestly there is quite a distinction in such adjudications. In any event the finding of incompetency to transact business and the appointment of a guardian was not tantamount to a finding the testator lacked testamentary capacity on December 8, 1943, the date of the last will. It has been held a finding of the probate court that an aged person was "feeble-minded and incapable of managing his affairs" and needed a guardian could be rebutted by evidence showing competency to make a will three weeks later. (*Mingle v. Hubbard,* 131 Kan. 844, 293 Pac. 513.) It is practically a universal rule that the mere fact one is under guardianship does not deprive him of the power to make a will. (Anno. 8 A. L. R. 1375.) The trial court found the preponderance of the evidence adduced on the hearing for probate of the last will showed testamentary capacity on the date that will was executed.

The time when a will is made is the time of primary importance to be considered in estimating testamentary capacity. Evidence of capacity or lack of capacity before or after that time serves only as an aid to determine the primary question. For example, the fact a person was afflicted with senile dementia before a will was made is not conclusive of his continued incapacity to make a will at a considerably later date. (*Wisner v. Chandler,* 95 Kan. 36, 147 Pac. 849.) The same rule has been applied in cases involving some other ailments. (*Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494; *Kunkle v. Urbansky,* 153 Kan. 117, 109 P. 2d 71.)

Of course, the testimony of expert witnesses is important in cases involving mental capacity and should always receive proper consideration but the trier of facts is not bound to accept their testimony as true. (*Mingle v. Hubbard,* supra.)

The test of testamentary capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions. (*Kunkle v. Urbansky,* supra.) Nor is absolute soundness of mind the real test of testamentary capacity.

(*Kunkle v. Urbansky*, supra; *In re Estate of Crump*, 161 Kan. 154, 157, 166 P. 2d 684.) The established rule in this state, although not always stated precisely in the same manner, is that one who is able to understand what property he has and how he wants it to go at his death is competent to make a will even though he may be feeble in mind and decrepit in body. (*Cole v. Drum*, 109 Kan. 148, 197 Pac. 1105; *Klose v. Collins*, supra; *Anderson v. Anderson*, 147 Kan. 273, 76 P. 2d 825; *Kunkle v. Urbansky*, supra.)

Appellants recognize the established rule that appellate courts are concerned only with evidence which supports findings and not with evidence contrary thereto. They contend there was no evidence to support the finding of competency. With that contention we cannot agree. It will serve no useful purpose to delineate and compare the conflicting testimony of the various witnesses.

It must always be borne in mind that on review the question is not what effect the testimony may have on appellate courts but only whether there was substantial testimony which could have convinced the trial court. Where, as here, there is such testimony this court is precluded from disturbing the findings.

What about undue influence? Natural human desire, motive and opportunity to exercise undue influence do not alone authorize the inference it was in fact exercised. Nor is mere suspicion or possibility of parties having induced the making of a will favorable to them as beneficiaries enough to justify a finding of undue influence. (*Klose v. Collins*, supra.)

The test of undue influence, sufficient to destroy a will, is that it must amount to such coercion, compulsion and restraint as to destroy the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercise his own. (*Anderson v. Anderson*, supra.)

The burden of establishing undue influence, of course, rests on him who asserts it. (*Anderson v. Anderson*, supra.) A review of the record convinces us we cannot reverse the judgment on the theory the trial court was obliged to believe appellants met that burden.

The judgment is affirmed.