No. 37,616 and No. 37,683

In re Estate of Adele A. Smith, Deceased, et al., *Appellees*, v. GEORGE C. DAVIS, et al., *Appellants*.

(212 P. 2d 322)

Opinion filed December 10, 1949.

*Bert J. Lempenau,* of Topeka, and *Walter A. Raymond,* of Kansas City, Mo., argued the cause, and Sam B. Bartlett, of Kansas City, Mo., was with them on the briefs for the appellants.

*John S. Dean, Jr.,* and *Peter F. Caldwell,* both of Topeka, argued the cause, and *Ralph F. Glenn,* of Topeka, was with them on the briefs for the appellees.

*Edward Curry,* of Topeka, was on the briefs as guardian *ad litem* of Adrian Wallace Whited, appellee.

The opinion of the court was delivered by

WEDELL, J.: Two appeals arise out of proceedings by heirs at law to contest the probate of the will of Adele A. Smith, deceased. The two proceedings were consolidated in the district court and the appeals likewise have been consolidated here.

The heirs at law are a niece and two nephews of Adele A. Smith, deceased, and are children of a prior deceased half sister of Adele A. Smith, testatrix of the instant will. The Columbian Title and Trust Company was nominated by the testatrix as the executor of her estate. It filed a petition in the probate court for the probate of the will and for appointment as executor. Both orders were made without opposition in the probate court. Within nine months the heirs appealed to the district court from such orders.

In the district court the heirs demurred to the executor's petition for probate on three grounds. The only one of those grounds now relied on is, "That the proponent has no legal capacity to sue." The demurrer was overruled. From that ruling the heirs have appealed. The correctness of the ruling is the sole issue presented here in case No. 37,616. The question in that case is, therefore, whether a testamentary executor has the power and capacity to file a petition for the probate of the will.

Appellants' contention an executor does not have such capacity is based on two theories. One is that prior to the adoption of the new probate code the statute pertaining to the probate of wills specifically named the executor, as well as any person interested, as

one who might petition for the probate of a will (G. S. 1935, 22-208) and that in the new code adopted in 1939 the legislature omitted from that statute the word "executor" and said, "Any person interested in the estate . . . may petition for the probate. . . ." (G. S. 1947 Supp. 59-2221.)

Appellants rely on the rule that when a statute is revised, some part being omitted, the omitted parts are not readily to be supplied by construction but are ordinarily to be considered as annuled, citing *Chicago, R. I. & P. Rly. Co. v. Nichols,* 130 Kan. 509, 287 Pac. 262, and other decisions announcing the same rule.

Appellants misinterpret the old statute referred to and confuse two statutes dealing with separate and distinct subjects. The old statute mentioned did not expressly provide for a *petition* to probate a will. It specified who could produce—that is cause a will to be brought before the probate court—and further provided that the production of the will before that court could be compelled for the purpose of proving it. On the matter of compelling the production of the will in probate court see, also, the old statute, G. S. 1935, 22-211. The old code also provided that after the will had been produced the probate court should cause the witnesses to the will to come before the court and be examined. (G. S. 1935, 22-213; *Pee v. Carlyle,* 120 Kan. 200, 243 Pac. 296.) The provision under the new code corresponding in purpose to the old provision (G. S. 1935, 22-208 and some others) for the production of a will in the probate court and to proceedings to compel its delivery to that court by a person having custody thereof is not G. S. 1947 Supp. 59-2221, as contended by appellants, but is G. S. 1947 Supp. 59-621. The present code now specifically provides an additional and separate proceeding. It expressly provides for a *petition* to probate a will and states who may file it. (G. S. 1947 Supp. 59-2221.) It follows the latter statute is not actually a revision of G. S. 1935, 22-208, and the rule pertaining to a revision of a particular statute relied upon by appellants does not apply.

Moreover it will presently appear that under decisions of this court rendered prior to the adoption of the new code the words "person interested" were believed sufficient to include an executor and hence the lawmakers in enacting the new statute, G. S. 1947 Supp. 59-2221, realized it was superfluous to expressly mention an executor in that statute. We need not, however, rest our decision entirely on what has been said thus far. The question whether a

testamentary executor may petition for the probate of a will will be further illuminated under appellants' next contention.

Appellants' second theory is an executor is not a "person interested in the estate" (G. S. 1947 Supp. 59-2221) for the reason the words "person interested" are ordinarily interpreted to mean a person having a pecuniary interest. Assuming such a connotation were intended it would be difficult, if not impossible, to say an executor had no pecuniary interest in the decedent's estate. An executor, unlike an administrator, is nominated by the decedent to administer a trust. He has a right to administer it provided he is legally competent and accepts the trust. (*In re Estate of Grattan*, 155 Kan. 839, 851, 130 P. 2d 580.) He is, of course, entitled to reasonable compensation for services directed to be rendered as an executor. That alone would appear sufficient to make him a "person interested in the estate."

Although it is true the words "person interested" are often, and properly, interpreted to mean a person having a pecuniary interest, we think we would not be justified in concluding an executor's pecuniary interest in the estate constitutes the sole factor in determining his right to petition for the probate of a will. Even under the old code provision pertaining merely to the production of a will in the probate court this court in the Pee case, *supra*, said:

"The statute speaks of the 'person interested.' The probate court is not obliged to respond to the demand of a mere intruder, but any one is interested who may desire to make any legal use of the will. It is enough that a person may desire to found a claim upon it, or use it as evidence, or might be prejudiced if the will were not proved." (p. 202.)

Manifestly, an executor might be prejudiced by a denial of his right to perform as intended by the testator and to be compensated for his service if the will were not proved.

Furthermore, prior to the new code provision expressly authorizing any "person interested in the estate" to file a petition for the probate of a will it was held to be the actual duty of an executor named in a will to offer the will for probate for the benefit of all concerned. (*In re Estate of Hooper*, 144 Kan. 549, 555, 61 P. 2d 1335.) Under the new code it is made the duty of a person having custody of a will to deliver it to the court which has jurisdiction after death of the testator. (G. S. 1947 Supp. 59-621.) Touching related statutes see, also, G. S. 1947 Supp. 59-618, 59-620.

An executor being nominated by the decedent possesses certain rights even prior to his formal appointment by the probate court.

Although prior to granting letters testamentary he may not dispose of any part of the estate he nevertheless has the power to pay funeral expenses and to do things necessary to conserve the estate. (G. S. 1947 Supp. 59-704.) The fact a person is named as executor or beneficiary in the will establishes "his interest in the estate of the decedent." (2 Bartlett's Kansas Probate Law and Practice, § 1057.)

In view of certain decisions from foreign jurisdictions cited by appellants it may be well to state we are not dealing now with the right of an executor to *contest* a will but only with his right and duty to *uphold and enforce* it. Whatever the rule may be elsewhere we have no hesitancy in concluding that under our own early decisions and various provisions of the probate code an executor has a sufficient interest in the estate of a decedent to permit him to petition for the probate of the will. It follows the demurrer of the heirs to the petition for probate was properly overruled.

This brings us to a consideration of the second proceeding, case No. 37,683. This appeal pertains primarily to the testamentary capacity of the deceased. The contest is between the executor and certain beneficiaries in the will as proponents and the previously mentioned heirs at law as opponents of the will.

Before treating the subject of testamentary capacity and a contention certain evidence was erroneously admitted we shall first eliminate all consideration of allegations in the pleadings pertaining to fraud, coercion, breach of trust or false representations on the part of any of the proponents, including the scrivner of the will. It is highly unfortunate that defamatory charges which, if true, would constitute grounds for disbarment proceedings, should be made in the total absence of evidence even tending to support them. We would be inclined to comment further on this subject if the record before us disclosed present counsel for appellants drafted the pleadings containing such charges. In fairness to appellants' present counsel it should be stated their briefs contain no attempt to support these charges. They will be regarded as having been completely abandoned.

We need not labor the subject of undue influence. It is sufficient to say we have repeatedly held mere guess, suspicion, conjecture and possibility or opportunity for undue influence are insufficient to invalidate a will in the absence of testimony disclosing an exercise of undue influence. (*Ginter v. Ginter*, 79 Kan. 721, 741, 101 Pac. 634;

*Klose v. Collins,* 137 Kan. 321, 20 P. 2d 494; *In re Estate of Walker,* 160 Kan. 461, 462, 163 P. 2d 359.)

Legitimate influence has never been regarded as improper. It is malign influence resulting from fear, coercion or any other cause which deprives a testator of his free agency in the disposition of his property that the law condemns. (*Ginter v. Ginter,* supra p. 733; *Klose v. Collins,* supra; *Anderson v. Anderson,* 147 Kan. 273, 76 P. 2d 825.) When it is shown, as here, a will has been executed in accordance with the formalities required by law the burden to establish undue influence, or any other defense to a will, rests on the party asserting it. (*Ginter v. Ginter,* supra; *In re Estate of Harris,* 166 Kan. 368, 374, 201 P. 2d 1062.) A painstaking review of this lengthy record discloses it is entirely barren of testimony indicating the slightest attempt on the part of the scrivener or any other beneficiary to persuade or influence the testatrix to make a will contrary to her own wishes and desires.

Touching the criticism the testatrix had no independent advice and, therefore, the will was not valid under the provisions of G. S. 1947 Supp. 59-605, it will suffice to say the will was not prepared or written by the sole or principal beneficiary and the statute is not applicable. (*Klose v. Collins,* supra.) In fact, the scrivener of the will was the beneficiary of only a token gift which probably had little more than sentimental value.

The principal complaint is the record as a whole does not support the finding testatrix possessed testamentary capacity on November 25, 1947, the day she executed the will. Appellants are correct in contending that while testimony concerning the mental condition of the testatrix shortly before and after the execution of the will may be considered, the evidence pertaining to her condition on November 25 is of primary importance. (*Wisner v. Chandler,* 95 Kan. 36, 147 Pac. 849; *Barnhill v. Miller,* 114 Kan. 73, 75, 217 Pac. 274.) Appellants are also right in the contention if there is no substantial testimony disclosing testamentary capacity on that date and only testimony showing incapacity, the finding she possessed testamentary capacity cannot stand.

The difficulty does not lie in the rule, but in its application to the record in each case. The evidence pertaining to testamentary capacity, as in so many cases of this character, was highly conflicting. On review we are, of course, concerned only with the inquiry whether there was substantial testimony to support the trial court's

finding of capacity and not with conflicting evidence. We do not weigh or compare conflicting testimony. The comparison of such testimony and the weight to be accorded thereto, under the rule obtaining in this state, are matters resting solely in the province of the trial court and not in the appellate court. This rule, of course, applies to every element or defense interposed to the probate of a will. (*In re Estate of Walker*, supra, p. 462.) In other words it applies to the capacity of the testatrix to know what property she possessed, her capacity to know who were the natural objects of her bounty, if any, and to her capacity to decide to whom she preferred to leave her property. This is the established rule although the testator may be feeble in mind and decrepit in body. (*Kunkle v. Urbansky*, 153 Kan. 117, 122, 109 P. 2d 71; *In re Estate of Hall*, 165 Kan. 465, 470, 195 P. 2d 612.)

Appellants are correct in contending testimony as to testamentary capacity must be based on facts sufficiently definite to permit a witness to be able to give a correct opinion. (*In re Estate of Cross*, 166 Kan. 318, 321, 201 P. 2d 1052.)

Applying all these fundamental principles to the conflicting evidence we have no difficulty in concluding the court could find, as it did, that lack of testamentary capacity was not established. There was ample testimony to show: The testatrix had capacity to know what property she had; that she and her husband, who had died only recently, had frequently discussed and agreed upon the disposition to be made of her property in case she survived him; the testatrix desired to dispose of it just as they had agreed; she had gone over the rough draft of her will two days before signing the final draft; the scrivener spent thirty to forty-five minutes with her on the day she executed the will; while the testatrix was physically weak from a broken hip and prolonged hospitalization she was nevertheless mentally normal, coherent in her expression and knew what she was doing the day she executed the will; old friends visited with her on that day after she executed the will and were agreed she possessed mental capacity to know what property she had, her relatives and how she desired to dispose of her property.

There was testimony after the testatrix executed the will she expressed the satisfaction that "she was at rest about her business because she had transacted it as she and Clem [her deceased husband] had planned." There was substantial testimony the reason she did not leave any of her estate to two of the appellants and failed

to leave a larger amount to one of them was that she had not been with them a great deal and they had not meant much to her.

In the case of *Klose v. Collins*, supra, involving greater evidence of testamentary incapacity this court held:

"The fact that the testatrix at an advanced age when she executed a will, was childish, feeble-minded and forgetful, and had never looked after her own business matters herself, is not in and of itself sufficient ordinarily to render her mentally incompetent to make a valid will." (Syl. ¶ 2.)

See, also, *In re Estate of Hall*, supra, p. 470; *In re Estate of Harris*, supra, p. 373.

It is further argued the trial court rested its finding of testamentary capacity on a wrong theory, namely, that the testatrix had mental capacity to assent to her husband's plan for the disposition of her property. We need not debate the sufficiency of such a theory if that had actually been the court's theory. We think appellants' contention constitutes a too narrow interpretation of the court's findings. Without narrating or setting forth all the findings it is clear the court concluded the testamentary document represented her wishes and constituted her own will. It is very true the testatrix desired to dispose of the property at her death, as nearly as possible, in accordance with the plan she and her husband had frequently discussed during his lifetime and to which they had agreed. If the original plan had actually been his idea of disposition, and she understandingly and willingly agreed thereto, and continued in the desire to dispose of her property at the time she executed the testamentary instrument it constituted her own will. There is ample evidence that is precisely what she desired to do and what she believed she had done.

Appellants also argue the trial court erred in the admission of evidence of an incompetent witness, Dr. W. W. Mills, who testified that in his opinion the testatrix possessed capacity to know what property she had, her relatives and what she desired to do with her property. It is claimed the testimony was privileged and the doctor was an incompetent witness under the provisions of G. S. 1935, 60-2805. The specific objection was the doctor could not testify concerning any information he had obtained at any time while he was a doctor for the testatrix or had anything to do with her care.

The only professional services Doctor Mills rendered for the testatrix were in the hospital June 24, 1947, in connection with her broken hip. That was the last time he saw her professionally. He saw

her on two occasions thereafter, once at her husband's funeral the following November 13, and again socially in the hospital on December 25. His testimony pertained solely to the impressions he formed in those social conversations concerning her testamentary capacity. Dr. James Stewart was her regular physician. Our statute on privileged communications does not work a general disqualification of a physician to testify. It limits his incompetency as a witness to information acquired as a result, and in the line of, professional employment or duty in the treatment of a patient. Information received by a physician solely outside the course of professional services, unrelated thereto, and which is not confidential in its nature is not within the ban of the statute. The statute relating to the privilege of testimony of one's physician pertains to matters germane to the physician's diagnosis and treatment of the patient. (*State v. Townsend,* 146 Kan. 982, 73 P. 2d 1124; *State v. Aguirre,* 167 Kan. 266, 206 P. 2d 118; 58 Am. Jur., Witnesses, § 429.)

Appellants further argue Doctor Clark, a partner of Doctor Mills, treated the testatrix for her hip injury following Doctor Mills' services on June 24. They contend Doctor Mills, being a partner of Doctor Clark, could not testify, citing cases factually dissimilar to the instant case. Doctor Mills' testimony touching his impressions concerning testamentary capacity of the testatrix were in nowise based on information he had received from his partner concerning the testatrix, but were formed entirely from the social conversations he had with the testatrix long after June 24.

In view of the conclusion Doctor Mills was a competent witness we need not treat the further questions argued whether an executor may waive a privileged communication and whether such waiver, if permitted, is effective when a privileged communication is objected to by the heirs at law. In this connection, however, the following cases may be of interest: *Fish v. Poorman,* 85 Kan. 237, 242, 116 Pac. 898; *Flack v. Brewster,* 107 Kan. 63, 66-67, 190 Pac. 616; *Gorman v. Hickey,* 145 Kan. 54, 64, 64 P. 2d 587.

The judgment is affirmed.

PRICE, J., not participating.